**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| The Right Reverend Charles G. vonRosenberg, et al., | ) ) ) | Civil Action No. 2:13-587-RMG |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| The Right Reverend Mark J. Lawrence, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court on Bishops vonRosenberg and Adams's motion to amend their complaint, to join parties, and to add claims; The Episcopal Church of the United States' ("TEC") motion to amend its complaint-in-intervention, to join parties, and to add claims; and The Episcopal Church in South Carolina's ("ECSC") motion to intervene; and Bishop Lawrence's motion to amend his answer to TEC's complaint-in-intervention. For the reasons set forth below, the Court grants in part and denies in part Bishops vonRosenberg and Adams's motion to amend, TEC's motion to amend, and ECSC's motion to intervene. The Court grants Bishop Lawrence's motion to amend his answer to TEC's complaint-in-intervention.

## I. Background

Bishop vonRosenberg alleges that The Episcopal Church removed Bishop Lawrence as the Bishop of the Diocese of South Carolina and installed Bishop vonRosenberg in his place. Bishop Lawrence denies that he was removed, instead contending the Diocese of South Carolina (hereinafter, the "Lawrence Diocese") withdrew from TEC. On January 4, 2013, the Lawrence Diocese and certain associated churches and parishes sued TEC in the Dorchester County Court of Common Pleas, arguing the Lawrence Diocese had dissociated from TEC and seeking

"resolution of their real and personal property rights." The property at issue included the Lawrence Diocese's service marks, which the state-court plaintiffs alleged TEC had used in violation of South Carolina law. TEC filed an answer and counterclaims, including claims of trademark infringement and dilution under the Lanham Act.

On March 5, 2013, Bishop vonRosenberg filed this federal action, alleging Bishop Lawrence's continued assertions that he remains the Bishop of the Lawrence Diocese was false advertising in violation of the Lanham Act. In response, Bishop Lawrence asked this Court to abstain in favor of the state proceeding. In August 2013, Judge C. Weston Houck granted Bishop Lawrence's motion to abstain and dismissed the case.

Meanwhile, on February 3, 2015, the state court issued a final order in favor of the Lawrence Diocese. (Dkt. No. 86-6.) It held that the Lawrence Diocese had validly dissociated from The Episcopal Church and therefore owned the property at issue in the litigation, including the service marks. The state court permanently enjoined TEC and its agents from using the Lawrence Diocese's marks. The Lawrence Diocese appealed to the South Carolina Court of Appeals on March 24, 2015.[1]

Shortly thereafter, on March 31, 2015, the Fourth Circuit vacated Judge Houck's dismissal and remanded for determination of whether "exceptional" circumstances under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), justified abstention. On remand, Judge Houck again abstained, staying the federal proceeding until the conclusion of the state action. Bishop vonRosenberg again appealed and on February 21, 2017, the Fourth Circuit again vacated Judge Houck's order. The mandate issued on March 15, 2017, and Bishop vonRosenberg shortly thereafter filed an amended complaint, rewording certain allegations and

---

[1] The appeal was transferred to the South Carolina Supreme Court under Rule 204(b), SCACR.

adding his successor, Bishop Adams, as a Plaintiff. After Judge Houck passed away in July 2017, this case was assigned to the undersigned United States District Judge.

On August 2, 2017, the South Carolina Supreme Court held TEC owned most of the property at issue, reversing the Court of Common Pleas. *Protestant Episcopal Church in the Diocese of S.C. v. Episcopal Church*, 806 S.E.2d 82 (S.C. 2017), *reh'g denied* (Nov. 17, 2017), *petition for cert. filed*, No. 17-1136 (Feb. 9, 2018). The court also held that twenty-eight parishes associated with the Diocese held real and personal property in trust for the benefit of TEC. On the issue of service marks the court was fragmented, with Acting Justice Pleicones and Justice Hearn finding the trial court erred in holding the Lawrence Diocese's state-registered trademarks prevail over TEC's federal trademarks, Chief Justice Beatty expressing no opinion because the issue should be decided in this pending federal proceeding, and Acting Justice Toal and Justice Kittredge finding that the Lawrence Diocese's service marks are validly registered under state law but that determination of the effect of federal trademark law on the marks should be decided in this pending federal proceeding. A petition for rehearing was denied and the remittitur issued. A petition for a writ of certiorari is pending before the United States Supreme Court.

On August 15, 2017, TEC moved for leave to intervene of right or, alternatively, for permissive intervention. The Court granted the motion and TEC's complaint-in-intervention was filed on September 1, 2017 (Dkt. No. 83.) Now before the Court are

- TEC's motion to amend its complaint to join as parties (1) the Lawrence Diocese, incorporated as The Protestant Episcopal Church in the Diocese of South Carolina, (2) the Trustees of The Protestant Episcopal Church in the Diocese of South Carolina (the "Trustees Corporation"), a nonprofit religious corporation allegedly under Bishop Lawrence's control, (3) a large number of

parishes associated with the Lawrence Diocese. TEC also moves to add claims under South Carolina trust law against the twenty-eight parishes associated with the Lawrence Diocese holding real and personal property in trust for the benefit of TEC.

- Bishops vonRosenberg and Adams's motion to amend their complaint to add claims under the Lanham Act for false advertising and trademark infringement against (1) Bishop Lawrence, (2) the Lawrence Diocese, (3) the Trustees Corporation, (3) a large number of parishes associated with the Diocese led by Bishop Lawrence, and (4) John Doe defendants. They also move to add claims under South Carolina trust law against the Trustees Corporation and the twenty-eight parishes associated with the Lawrence Diocese holding real and personal property in trust for the benefit of TEC.

- ECSC's motion to intervene and to file a complaint in intervention, asserting Lanham Act and state law false advertising and trademark infringement claims against against (1) Bishop Lawrence, (2) the Lawrence Diocese, (3) the Trustees Corporation, (3) a large number of parishes associated with the Lawrence Diocese, and (4) John Doe defendants. ECSC also moves to assert claims under South Carolina trust law against the Trustees Corporation and the twenty-eight parishes associated with the Lawrence Diocese holding real and personal property in trust for the benefit of TEC

- Bishop Lawrence's motion to amend his answer to TEC's complaint-in-intervention to add counterclaims. Plaintiffs consent to the amendment.

## II. Legal Standard

### A. Amendment of Pleadings

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, after the time has passed to amend a pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 15(a) is a "liberal rule [that] gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). However, "[m]otions to amend are committed to the discretion of the trial court." *Keller v. Prince George's County*, 923 F.2d 30, 33 (4th Cir. 1991). Thus, "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 602-03 (4th Cir. 2010).

### B. Intervention

Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention. "Intervention of Right" requires the court to permit anyone to intervene upon timely motion who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Thus, to intervene as of right, a movant must show: (1) timely application; (2) an interest in the subject matter of the underlying action; (3) that a denial of the motion for leave to intervene would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to the litigation. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). "A party moving for intervention under 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying all four

requirements." *U.S. ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 937 (D. Md. 2004). Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion for leave to intervene as a matter of right. *See NAACP v. New York*, 413 U.S. 345, 369 (1973).

"Permissive Intervention," on the other hand, allows the court, in its discretion, to permit anyone to intervene upon timely motion who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising discretion under Rule 24(b), "the court shall consider whether the intervention will unduly delay or prejudice the application of the rights of the original parties." Fed. R. Civ. P. 24(b)(3).

## III.    Discussion

Plaintiffs' various motions to add claims and to add parties are most efficiently addressed in the following order: (1) whether Plaintiffs should be permitted to assert false advertising and trademark infringement claims against the Lawrence Diocese, the associated parishes, and the Trustees Corporation, (2) whether Plaintiffs should be permitted to add trust law claims against 28 associated parishes, and (3) whether the ECSC should be permitted to intervene.

Before addressing those issues, the Court dispenses with a threshold issue. Defendants argue this Court should not consider any issue raised in their petition to the United States Supreme Court for a writ of certiorari in the state litigation. They also ask this Court to stay this matter until the Supreme Court disposes of their petition. (Dkt. No 138 at 22–24.)

That argument is without merit. The judgment of the South Carolina Supreme Court is a final judgment and is the law of that case. The losing parties' decision to petition for a writ of certiorari does not place the South Carolina Supreme Court's decision into abeyance. Nor does it provide any reason for this Court to abstain from hearing any issue properly before this Court. The

Supreme Court knows how to stay a lower court decision pending review when it wishes to do so. *See, e.g., Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080 (2017).

**A.     Whether Plaintiffs should be permitted to assert false advertising and trademark infringement claims against the Lawrence Diocese, parishes associated with the Lawrence Diocese, and the Trustees Corporation**

Plaintiffs allege the Lawrence Diocese, 54 parishes associated with the Lawrence Diocese, and the Trustees Corporation are infringing TEC's trademarks and engaging in false advertising in a manner similar to and in concert with Bishop Lawrence and the John Doe Defendants. (*See* Dkt. No. 125-2.) Plaintiffs seek injunctive and declaratory relief. (*Id.*) If the Lawrence Diocese, the parishes, and the Trustees Corporation are not joined in this action, any injunctive or declaratory relief granted against Bishop Lawrence and the John Doe Defendants would not apply to the associated parishes or the Trustees Corporation. Thus, according to Plaintiffs, the Court cannot accord complete relief to Plaintiffs without joinder of the additional allegedly infringing parties, which makes their joinder mandatory under Rule 19 of the Federal Rules of Civil Procedure.

Defendants can respond to that straightforward and persuasive argument only by arguing joinder of the Lawrence Diocese, the parishes, and the Trustees Corporation is not needed for Plaintiffs to obtain complete relief. Defendants argue this is so because the present complaints only allege infringement by Bishop Lawrence, not the diocese he leads or the constituent parishes of that diocese. That argument might be sound if the additional Defendants were unassociated with Bishop Lawrence, but it is obviously without merit where the additional Defendants are, allegedly, constituent organizations acting under his leadership and jointly with him. The Court therefore grants Plaintiffs' motions insofar as they seek to assert trademark infringement and false advertising claims against the Lawrence Diocese, parishes associated with the Lawrence Diocese, and the Trustees Corporation.

**B.    Whether Plaintiffs should be permitted to add their proposed trust law claims against 28 associated parishes**

The South Carolina Supreme Court has held that 28 parishes associated with the Diocese hold their real and personal property in trust for the benefit of TEC.  In Count Three of TEC's proposed second amended complaint-in-intervention and Count Four of Bishops vonRosenberg and Adams's proposed third amended complaint and ECSC's proposed complaint-in-intervention, Plaintiffs invoke this Court's supplemental jurisdiction to assert a claim under South Carolina Code § 62-7-706, which permits a trust beneficiary to seek a court order removing a trustee. Plaintiffs allege the parishes have breached their fiduciary duties by allowing property held in trust for TEC to be used "in connection with a denomination" other than TEC.  (Dkt. No. 125-2 ¶ 45.) Plaintiffs pray the Court to "Declare that the 28 Trustee Parishes have committed a serious breach of the trust they owe to The Episcopal Church and have demonstrated their unfitness, unwillingness, and persistent failure to administer the trust effectively" and to "Order the 28 Trustee Parishes to remove from their vestries any persons who cannot demonstrate to this Court's satisfaction that they are capable of and willing to carry out their fiduciary obligations to The Episcopal Church, and replace them with persons who can make such demonstration to the Court's satisfaction." (Dkt. No. 125-2.)

The United States Supreme Court has held that a statute must "not foster 'an excessive government entanglement with religion.'" *Lemon v. Kurtzman*, 403 U.S. 602, 613 (1971).  *Lemon* concerned state aid to parochial schools, not an injunction issued under a facially neutral law-of-trusts statute, but that distinction does not mean this Court is free to use trust law entangle itself with religion like a fly in a spider web.  Entry of a judicial order telling 28 congregations whom they may or may not elect to their respective parish vestries would foster excessive judicial entanglement with religion.  The parish rector presides over the vestry.  Would he be required to

demonstrate his willingness "to carry out [his] fiduciary obligations to The Episcopal Church"— *i.e.*, demonstrate his loyalty to a particular Protestant denomination—to the Court's satisfaction? If he were not sufficiently loyal to TEC, would Plaintiffs' have the Court remove him from his church? Other vestry members are elected by the congregation. What would Plaintiffs have the Court do were the congregation to refuse to elect any person sufficiently loyal to TEC?

Of course, there are other ways for TEC to enforce its property rights. For example, TEC could take legal possession of the parish property held in trust for its benefit, rather than asking a federal court to supervise the local congregation's use the property. The Court therefore denies Plaintiffs' motions to the extent they seek injunctive relief regarding the composition of parish vestries.

Plaintiffs' request for declaratory relief regarding the vestries is similarly problematic. In principle, declaring whether a vestry holding real property in trust met its fiduciary obligation need not involve any judicial entanglement with religion. For example, a vestry might hold a commercial property in trust for the benefit of a national church. If the vestry members engaged in self-dealing with the trust *res*, that would be a clear breach of fiduciary duty. But here, the alleged breach is allowing the trust *res* to be used "in connection with a denomination" other than TEC. This Court cannot involve itself in determining exactly what religious services are or are not allowable in various parish churches across the Lowcountry. Churches often permit other denominations to use their facilities. *See, e.g.*, Emma Sapong, *Many congregations, one roof: Aging churches rent space to growing ones*, Minn. Public Radio (July 1, 2016), available at https://www.mprnews.org/story/2016/07/01/church-rentals-immigrant-congregations. Indeed, TEC does not really argue that allowing parish properties to be used "in connection with a denomination" other than TEC is a breach of fiduciary duty. Rather, TEC argues that allowing the

Lawrence Diocese to use parish facilities is a breach of fiduciary duty because the Lawrence Diocese contests TEC's claim to be the "true" Episcopal Church. Essentially, TEC asks the Court to declare parish vestrymen unfit for lay ministry because they allow schismatics to use church property. The Court cannot do that.

Moreover, even if concerns about judicial entanglement with religion were placed aside, the Court would decline to exercise supplemental jurisdiction over Plaintiffs' proposed trust claims. District courts may decline to exercise supplemental jurisdiction over a state-law claim if the claim would substantially predominate over the claims over which the district court has original jurisdiction. 28 U.S.C. § 1367(c)(2). Here, the proposed trust claims would, if allowed, substantially predominate the trademark claims in this federal trademark case. The Court would be called upon to make individual determinations as to whether a dozen or so vestrymen in 28 parishes (over 300 persons) made property management decisions that "demonstrate to this Court's satisfaction that they are capable of and willing to carry out their fiduciary obligations to The Episcopal Church." The Court understands that a breakaway group using a TEC property for its services could be seen as giving the public a false impression of association with TEC. But asking the Court to decide who may give permission to use parish property for what purposes would submerge the trademark issues under real property issues not before this Court. Again, the better solution to the problem might be for TEC to take possession of the properties, rather than asking a federal court to assist the management of the properties. And the better forum for enforcement of the South Carolina Supreme Court's decision concerning TEC's real property rights is the court

that received the remittitur, the Dorchester County Court of Common Pleas, where these issues have been litigated for over five years.[2]

The Court therefore denies Plaintiffs' motions insofar as they seek to assert trust law claims against parishes associated with the Lawrence Diocese.

## C.     ECSC's motion to intervene

Defendants object to any Plaintiffs joining additional Defendants or adding trust law claims against any Defendant, but they do not articulate an objection to ECSC being a plaintiff regarding what false advertising and trademark claims may be permitted against those Defendants that may be joined. For the reasons set forth above, the Court therefore grants in part and denies in part ECSC's motion to intervene. The motion is granted insofar as ECSC may file a complaint-in-intervention asserting false advertising and trademark claims against any Defendant, including associated parishes and the Trustees Corporation, and denied insofar as ECSC seeks to assert trust claims against individual parishes.

## D.     Bishop Lawrence's motion to amend his answer

Bishop Lawrence's motion to amend his answer (Dkt. No. 134) is timely and Plaintiffs consent (Dkt. No. 137). The Court therefore grants the motion to amend.

---

[2] The Court notes in passing that Defendants' arguments in opposition to Plaintiffs' motions regarding trust claims, other than the argument that the state trust law claims would predominate over the federal trademark claims, are without merit. The alleged breach of fiduciary duty—allowing the Lawrence Diocese to use property held in trust for TEC—plainly arises from a nucleus of operative fact common to the trademark infringement claims. The "Betterment Act" action currently pending in state court is an *in personam* action, not an *in rem* or *quasi in rem* action over the trust *res* that would deprive this Court of jurisdiction. As the Fourth Circuit has repeatedly held, there is no basis for abstention in this case. Defendants' petition for review of the final judgment of the South Carolina Supreme Court certainly does not create a basis for abstention.

## IV.     Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Bishops vonRosenberg and Adams's motion to amend their complaint, to join parties, and to add claims (Dkt. No. 124); The Episcopal Church of the United States' motion to amend its complaint-in-intervention, to join parties, and to add claims (Dkt. No. 125); and The Episcopal Church in South Carolina's motion to intervene (Dkt. No. 126).  The Court **GRANTS** Bishop Lawrence's motion to amend his answer to The Episcopal Church of the United States' complaint-in-intervention (Dkt. No. 134).

     **AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

April _16_ 2018
Charleston, South Carolina