**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| The Right Reverend Charles G. vonRosenberg, individually and in his capacity as the former Provisional Bishop of The Episcopal Church in South Carolina and The Right Reverend Gladstone B. Adams, III, individually and in his capacity as the Provisional Bishop of The Episcopal Church in South Carolina, | ) ) ) ) ) ) )  Case No. 2:13-cv-00587-RMG |
| | ) |
| Plaintiffs, | ) |
| | ) **THIRD AMENDED** |
| The Episcopal Church, | ) **COMPLAINT BY** |
| | ) **BISHOP VONROSENBERG** |
| Plaintiff-in-Intervention, | ) **BISHOP ADAMS** |
| | ) **&** |
| The Episcopal Church in South Carolina, | ) **INTERVENOR** |
| | ) **THE EPSICOPAL CHURCH** |
| Plaintiff-in-Intervention, | ) **IN SOUTH CAROLINA** |
| | ) **(the "Associated Diocese")** |
| v. | ) |
| | ) |
| The Right Reverend Mark J. Lawrence; The corporation currently calling itself "The Protestant Episcopal Church in the Diocese of South Carolina"; The Trustees of the Protestant Episcopal Church in South Carolina; All Saints Protestant Episcopal Church, Inc.; Christ St. Paul's Episcopal Church; Church of The Cross, Inc. and Church of the Cross Declaration of Trust; Church of The Holy Comforter; Church of the Redeemer; Holy Trinity Episcopal Church; Saint Luke's Church, Hilton Head; St. Bartholomew's Episcopal Church; St. David's Church; St. James' Church, James Island, S.C.; St. Paul's Episcopal Church of Bennettsville, Inc.; The Church of St. Luke and St. Paul, Radcliffeboro; The Church of Our Saviour of the Diocese of South Carolina; The Church of the Epiphany (Episcopal); The Church of the Good Shepherd, Charleston, SC; The Church of The Holy Cross; The Church of The Resurrection, Surfside; The Protestant Episcopal Church of The Parish of Saint Philip, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

in Charleston, in the State of South Carolina;        )
The Protestant Episcopal Church, The Parish of        )
Saint Michael, in Charleston, in the State of South   )
Carolina and St. Michael's Church Declaration         )
of Trust; The Vestry and Church Wardens of            )
St. Jude's Church of Walterboro; The Vestry and       )
Church Wardens of The Church of The Parish of         )
St. Helena and The Parish Church of St. Helena        )
Trust; The Vestry and Church Wardens of The           )
Parish of St. Matthew; The Vestry and Wardens         )
of St. Paul's Church, Summerville; Trinity Church     )
of Myrtle Beach; Trinity Episcopal Church;            )
Trinity Episcopal Church, Pinopolis; Vestry and       )
Church Wardens of the Episcopal Church of The         )
Parish of Christ Church; Vestry and Church            )
Wardens of The Episcopal Church of the Parish of      )
St. John's, Charleston County; Christ the King,       )
Waccamaw; St. Matthews Church; St. Andrews            )
Church-Mt. Pleasant Land Trust; St. John's            )
Episcopal Church of Florence, S.C.; St. Matthias      )
Episcopal Church, Inc.; St. Paul's Episcopal          )
Church of Conway; The Vestry and Church               )
Wardens of The Episcopal Church of The                )
Parish of Prince George Winyah; The Vestries          )
and Churchwardens of The Parish of St. Andrews;       )
Holy Apostles, Barnwell; St. James Anglican,          )
Blackville; Berkeley County Strawberry Chapel;        )
St. Alban's Chapel, The Citadel; St. Andrew's         )
Mission; St. John's Episcopal, Charleston;            )
St. Barnabas, Dillon; Christ Church, Florence;        )
St. James, Goose Creek; Holy Trinity, Grahamville;    )
Ascension, Hagood; Church of the Advent, Marion;      )
The Well by the Sea, Myrtle Beach; Church of the      )
Resurrection, Myrtle Beach; Grace Parish, North       )
Myrtle Beach; St. Paul's, Orangeburg;                 )
St. Timothy's, Cane Bay;                              )
Atonement, Walterboro; Church of the Holy Cross,      )
Sullivan's Island; and John Does 1-10,                )
                                                      )
                   Defendants.                        )
_____       )

## INTRODUCTION

The Right Reverend Charles G. vonRosenberg ("Bishop vonRosenberg"), the Right Reverend Gladstone B. Adams, III ("Bishop Adams"), and The Episcopal Church in South Carolina (the "Associated Diocese"), complain and allege as follows:

1.     In 2012, a schismatic group, led by Bishop Lawrence, left The Episcopal Church.  Despite their departure, they continue to call themselves an Episcopal diocese made up of Episcopal parishes.  This is confusing the public and causing harm to The Episcopal Church, its Associated Diocese, and Bishop vonRosenberg and Bishop Adams. This action seeks to stop them from doing so.

## PARTIES

2.     Plaintiff, The Episcopal Church in South Carolina, referred to herein as the Associated Diocese, is the diocese associated with The Episcopal Church that was founded in the eighteenth century and it is the sole beneficiary of the trust that holds the diocesan property, as well as a beneficiary, together with The Episcopal Church, of the trusts that hold the parish property in accordance with the Dennis Canon, according to the South Carolina Supreme Court.   The Associated Diocese formed a corporation in 1973 to operate under the name "The Protestant Episcopal Church in South Carolina," which corporation was amended in 1987 to operate under the name "The Protestant Episcopal Church in the Diocese of South Carolina."  Bishop Lawrence and his followers hold themselves out as maintaining control of that corporation and they improperly use the name of the corporation to refer to themselves.  The Associated Diocese currently uses the name The Episcopal Church in South Carolina, which it temporarily adopted in compliance with a consent order in state court entered in 2013 during the pendency of the

state case and prior to the recent decision of the South Carolina Supreme Court.  The Associated Diocese's rightful, real, and historic name and variations thereof include: "The Protestant Episcopal Church in the Diocese of South Carolina," the "Diocese of South Carolina," and "The Episcopal Diocese of South Carolina."

3.      Plaintiff Bishop vonRosenberg is the former Provisional Bishop of the Associated Diocese.  At the time this action was filed, on March 5, 2013, Bishop vonRosenberg was the Provisional Bishop of the Associated Diocese.  Bishop vonRosenberg has since been succeeded by Plaintiff Bishop Adams who is now the Provisional Bishop of the Associated Diocese.  Bishop vonRosenberg remains a Bishop in The Episcopal Church.  Bishop vonRosenberg is a citizen of the United States and a resident of South Carolina.

4.      Plaintiff Bishop Adams is Bishop vonRosenberg's successor and the current Provisional Bishop of the Associated Diocese.

5.      Defendant Bishop Lawrence is a former Bishop of The Episcopal Church and the Associated Diocese who renounced his position in The Episcopal Church and was removed from his position by The Episcopal Church.  Bishop Lawrence is a citizen of the United States and a resident of South Carolina.

6.      Upon information and belief, Defendants John Does 1-10 are individuals who are consciously engaged in false advertising and trademark infringement together with Bishop Lawrence, but whose identity and numbers are presently unknown.

7.      Defendant the corporation currently calling itself  "The Protestant Episcopal Church in the Diocese of South Carolina" (the "Lawrence Diocese" or the "Corporation") was originally formed by the Associated Diocese in 1973.  Its original

charter stated: "The purpose of the said proposed Corporation is to continue the operation of an Episcopal Diocese under the Constitution and Canons of The Protestant Episcopal Church in the United States of America." In 2010, the charter was amended to state that the corporation's purpose was "to continue operation under the Constitution and Canons of The Protestant Episcopal Church in the Diocese of South Carolina." In 2012, defendant Lawrence announced that the Corporation had dissociated from The Episcopal Church. Since that time, the Corporation has been under the control of Bishop Lawrence, holds itself out as a diocese of which Lawrence is the bishop, and disclaims any affiliation with The Episcopal Church. On information and belief, the Corporation holds no assets.

8.      Defendant The Trustees of the Protestant Episcopal Church in South Carolina (the "Trustees Corporation") was incorporated by the South Carolina General Assembly in 1902 "for the purpose of receiving and holding" property acquired by or for the Associated Diocese. The Trustees Corporation succeeded an earlier corporation, incorporated by the General Assembly in 1880, formed for the same purpose.

9.      The following defendants are South Carolina non-profit corporations, upon information and belief, that prior to 2012 were affiliated with The Episcopal Church and the Associated Diocese and since 2012 have claimed affiliation with the religious organization led by Defendant Lawrence (the "Lawrence Parishes"):

All Saints Protestant Episcopal Church, Inc.;
Christ St. Paul's Episcopal Church;
Church of The Cross, Inc. and Church of the Cross Declaration of Trust;
Church of The Holy Comforter;
Church of the Redeemer;
Holy Trinity Episcopal Church;

Saint Luke's Church, Hilton Head;
St. Bartholomew's Episcopal Church;
St. David's Church;
St. James' Church, James Island, S.C.;
St. Paul's Episcopal Church of Bennettsville, Inc.;
The Church of St. Luke and St. Paul, Radcliffeboro;
The Church of Our Saviour of the Diocese of South Carolina;
The Church of the Epiphany (Episcopal);
The Church of the Good Shepherd, Charleston, SC;
The Church of The Holy Cross;
The Church of The Resurrection, Surfside;
The Protestant Episcopal Church of The Parish of Saint Philip,  in Charleston, in the
State of South Carolina;
The Protestant Episcopal Church, The Parish of Saint Michael, in Charleston, in the
State of South Carolina and St. Michael's Church Declaration of Trust;
The Vestry and Church Wardens of St. Jude's Church of Walterboro;
The Vestry and Church Wardens of The Church of The Parish of St. Helena and The
Parish Church of St. Helena Trust;
The Vestry and Church Wardens of The Parish of St. Matthew;
The Vestry and Wardens of St. Paul's Church, Summerville;
Trinity Church of Myrtle Beach;
Trinity Episcopal Church;
Trinity Episcopal Church, Pinopolis;
Vestry and Church Wardens of the Episcopal Church of The Parish of Christ
Church;
Vestry and Church Wardens of The Episcopal Church of the Parish of  St. John's,
Charleston County.

Christ the King, Waccamaw;
St. Matthews Church;
St. Andrews Church-Mt. Pleasant Land Trust;
St. John's Episcopal Church of Florence, S.C.;
St. Matthias Episcopal Church, Inc.;
St. Paul's Episcopal Church of Conway;
The Vestry and Church Wardens of The Episcopal Church of The Parish of Prince
George Winyah;
The Vestries and Churchwardens of The Parish of St. Andrews

Holy Apostles, Barnwell
St. James Anglican, Blackville
Berkeley County Strawberry Chapel
St. Alban's Chapel, The Citadel
St. Andrew's Mission
St. John's Episcopal, Charleston
St. Barnabas, Dillon
Christ Church, Florence

St. James, Goose Creek
Holy Trinity, Grahamville
Ascension, Hagood
Church of the Advent, Marion
The Well by the Sea, Myrtle Beach
Church of the Resurrection, Myrtle Beach
Grace Parish, North Myrtle Beach
St. Paul's, Orangeburg
St. Timothy's, Cane Bay
Atonement, Walterboro
Church of the Holy Cross, Sullivan's Island

10.    The following twenty-eight Lawrence Parishes (the "28 Trustee Parishes") have been found by the Supreme Court of South Carolina to hold their real and personal property in trust for The Episcopal Church and the Associated Diocese:

All Saints Protestant Episcopal Church, Inc.;
Christ St. Paul's Episcopal Church;
Church of The Cross, Inc. and Church of the Cross Declaration of Trust;
Church of The Holy Comforter;
Church of the Redeemer;
Holy Trinity Episcopal Church;
Saint Luke's Church, Hilton Head;
St. Bartholomew's Episcopal Church;
St. David's Church;
St. James' Church, James Island, S.C.;
St. Paul's Episcopal Church of Bennettsville, Inc.;
The Church of St. Luke and St. Paul, Radcliffeboro;
The Church of Our Saviour of the Diocese of South Carolina;
The Church of the Epiphany (Episcopal);
The Church of the Good Shepherd, Charleston, SC;
The Church of The Holy Cross;
The Church of The Resurrection, Surfside;
The Protestant Episcopal Church of The Parish of Saint Philip, in Charleston, in the State of South Carolina;
The Protestant Episcopal Church, The Parish of Saint Michael, in Charleston, in the State of South Carolina and St. Michael's Church Declaration of Trust;
The Vestry and Church Wardens of St. Jude's Church of Walterboro;
The Vestry and Church Wardens of The Church of The Parish of St. Helena and The Parish Church of St. Helena Trust;
The Vestry and Church Wardens of The Parish of St. Matthew;
The Vestry and Wardens of St. Paul's Church, Summerville;
Trinity Church of Myrtle Beach;

Trinity Episcopal Church;
Trinity Episcopal Church, Pinopolis;
Vestry and Church Wardens of the Episcopal Church of The Parish of Christ
Church;
Vestry and Church Wardens of The Episcopal Church of the Parish of St. John's,
Charleston County.

## JURISDICTION AND VENUE

11.     This action includes claims arising under the Lanham Act, 15 U.S.C.

§§ 1051 *et seq.*

12.     This Court has federal question subject matter jurisdiction over those

Lanham Act claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338.

13.     This Court has supplemental jurisdiction over related state law trademark

claims pursuant to 28 U.S.C. § 1367.

14.     Personal jurisdiction is proper over all of the defendants because they are

South Carolina residents and entities and this action arises out of their operations and

actions in South Carolina.

15.     Venue is proper in this District and division pursuant to 28 U.S.C.

§ 1391(b) and Local Civil Rule 3.01(A) because Bishop Lawrence and many of the other

defendants reside or operate principally within this District and division.  In addition, a

substantial part of the events giving rise to the claims occurred in this District and

division, including, but not limited to, Defendants' wrongful conduct and the harm such

conduct has caused and will cause to Plaintiffs.

## FACTUAL BACKGROUND

**A.**     **The Episcopal Church Is A Hierarchical Church: Its Authority To Identify,
Select, Appoint, and Empower Its Leaders Is Controlling Under The First
Amendment**

16.    The Episcopal Church is an American religious institution founded in the eighteenth century shortly after the birth of this country.  It is an international unincorporated organization, having its administrative headquarters in New York, New York.

17.    This Court in this case, the South Carolina Supreme Court, the Supreme Court of the United States, and numerous other courts have for many years recognized that The Episcopal Church is a hierarchical church.  Order dated August 23, 2013 (ECF No. 30); *Protestant Episcopal Church in the Diocese of South Carolina v. The Episcopal Church*, 412 S.C. 211, 806 S.E.2d 82 (2017); *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 729 (1872); *Dixon v. Edwards*, 290 F.3d 699, 716 (4th Cir. 2002); *Rector, Wardens & Vestrymen of Christ Church in Savannah v. Bishop of Episcopal Diocese of Ga., Inc.*, 699 S.E.2d 45, 48 (Ga. Ct. App. 2010); *Episcopal Diocese of Mass. v. Devine*, 797 N.E.2d 916, 921 (Mass. 2003); *Daniel v. Wray*, 580 S.E.2d 711, 714 (N.C. Ct. App. 2003); *Protestant Episcopal Church in the Diocese of N.J. v. Graves*, 417 A.2d 19, 21 (N.J. 1980).

18.    Because The Episcopal Church is a hierarchical church, the First Amendment requires that the decisions of its designated authorities, rather than civil courts, control the resolution of controversies involving the proper identity of its leaders as well as the government and direction of subordinate bodies.  *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 724-25 (1979); *see also Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 704-05 (2012).

19.    The highest governmental body of The Episcopal Church is its General Convention, which is composed of two houses, the House of Bishops and the House of

Deputies, and is led by its Chief Pastor and Primate, the Presiding Bishop. The Presiding Bishop is charged with the responsibility for the operation of The Episcopal Church's central administration, supervising the operation of The Episcopal Church's 110 dioceses, and, for initiating and developing The Episcopal Church's policy and strategy and for speaking throughout The Episcopal Church about its policies, strategies, and programs.

20.     The governing rules of The Episcopal Church are set forth in its Constitution and Canons, as adopted by the General Convention.

21.     All other governmental bodies and leadership roles in The Episcopal Church, including its geographical dioceses, bishops, clergy, parishes, and parishioners, are subordinate to the General Convention and subject to the governing rules of the Constitution and Canons of The Episcopal Church.

**B.**     **The Episcopal Church Has An Interstate Structure Of Dioceses, Bishops, Priests, Parishes, And Parishioners**

22.     The Episcopal Church has an interstate geographical organizational structure of duly formed dioceses, including 110 dioceses located throughout the country and the world, with at least one in every state of the United States.

23.     The Episcopal Church has an interstate leadership structure of duly installed and authorized bishops, including approximately 275 authorized bishops in the House of Bishops, with at least one in every state.

24.     The Episcopal Church has an interstate membership structure of authorized parishes, including more than 6,500 authorized parishes and worshipping congregations located throughout the country and the world, with many authorized parishes in every state.

25.     The Episcopal Church has an interstate clergy structure of duly appointed priests, including approximately 10,000 authorized priests throughout the country and the world, with many authorized priests in every state.

26.     The Episcopal Church has an interstate body of individual parishioners, including nearly 2 million parishioners throughout the country and the world, with many parishioners in every state.

## C.      The Episcopal Church Owns And Controls Its National Brand And Authorizes Its Use In States Across The Country

27.     "The Episcopal Church" is a national brand that is well known by the general public in every state in the country, particularly by consumers of religious services.

28.     The Episcopal Church owns and controls its national brand.

29.     The Episcopal Church owns and controls a proliferation of federal trademark registrations that include various uses of the dominant word "Episcopal" in connection with religious services, including the following federal trademark registrations:

> a.     Mark:  "The Episcopal Church"
>
> Reg. No: 3,195,455
>
> Reg. Date: January 9, 2007
>
> Goods and Services: Religious services, namely, ministerial, evangelical, and missionary services
>
> b.     Mark:  "The Episcopal Church"
>
> Reg. No: 3,195,454
>
> Reg. Date: January 9, 2007

Goods and Services: Information publications and educational materials covering religious and church-related topics, namely, books, magazines, pamphlets, and newsletters

c.    Mark:  "The Episcopal Church"

Reg. No: 3,379,870

Reg. Date: February 12, 2008

Goods and Services: Religious instruction services

d.    Mark:  "The Protestant Episcopal Church In The United States Of America"

Reg. No: 3,342,725

Reg. Date: November 27, 2007

Goods and Services: Religious services, namely, ministerial, evangelical, and missionary services

e.    Mark:  "Episcopal News Service"

Reg. No: 2,928,522

Reg. Date: March 1, 2005

Goods and Services: Providing information online featuring news and general interest information from an Episcopal perspective

f.    Mark:  "The Episcopal Church Welcomes You"

Reg. No: 3,342,677

Reg. Date: November 27, 2007

Goods and Services: Religious services, namely, ministerial, evangelical, and missionary services

g.     Mark:  "La Iglesia Episcopal" (Spanish for "The Episcopal Church")

Reg. No: 3,378,049

Reg. Date: February 5, 2008

Goods and Services: Informational publications and educational materials covering religious topics, namely, books, magazines, pamphlets, and newsletters

h.     Mark:  "La Iglesia Episcopal" (Spanish for "The Episcopal Church")

Reg. No: 3,378,051

Reg. Date: February 5, 2008

Goods and Services: Religious instruction services

g.     Mark: (Shield Design)



Reg. No: 3322456

Reg. Date: Oct. 30, 2007

Goods and Services: Informational publications and educational materials covering religious topics, namely, books, magazines, pamphlets, and newsletters

30.     The Episcopal Church owns and controls additional unregistered marks under the common law.  Its rights are not limited to its federally registered marks.

31.     The Episcopal Church's rights under its federal trademark registrations and the common law include the right to prevent the unauthorized use of confusingly similar marks in connection with confusingly similar services.

32.     Related and similar marks include, for example, marks including a dominant word, such as "Episcopal," together with descriptive words that indicate an ecclesiastical division, such as "Diocese," and descriptive words that indicate a geographic location, such as "South Carolina."

33.     The Episcopal Church authorizes its dioceses, bishops, clergy, parishes, worshipping congregations, and parishioners to use its national brand, its marks, and related or similar marks, to advertise their authority in and/or affiliation with The Episcopal Church and with each other, and that the nature and quality of their services are consistent with those prescribed and sanctioned by The Episcopal Church.

34.     Such authorized use inures to the beneficial ownership of The Episcopal Church pursuant to 15 U.S.C. § 1055 and the common law.

35.     Such authorized use constitutes an express or implied license.

36.     Such authorized use further proliferates the strength of The Episcopal Church's national brand across the country in every state.

37.     As a result of two centuries of such authorized use, when the public, particularly consumers of religious services, see and hear advertisements that include various combinations of the words "Bishop," "Episcopal," and "Diocese"– without any clear differentiating words or disclaimers such as "Reformed" or "African Methodist" –

they presume and believe that they are dealing with a leader in The Episcopal Church, and one who is providing services consistent with those prescribed and sanctioned by The Episcopal Church.

**D.    The Associated Diocese's South Carolina Marks**

38.    In 2010, The Episcopal Church's diocese in the eastern region of South Carolina, referred to herein as the Associated Diocese, applied for and registered four marks with the South Carolina Secretary of State, including the following marks (collectively referred to herein as the "State Registrations"):

    a.    "The Protestant Episcopal Church in the Diocese of South Carolina";

    b.    "The Diocese of South Carolina";

    c.    "The Episcopal Diocese of South Carolina"; and

    d.    The following seals (color and black and white):



39.    The Episcopal Church's authorized diocese, the Associated Diocese, led at the time this suit was filed by Bishop vonRosenberg and currently by Bishop Adams, is the rightful owner of the marks reflected in the State Registrations.

**E.    Authorized Use: The Associated Diocese and Bishops vonRosenberg & Adams**

40.     The Associated Diocese is The Episcopal Church's diocese in this region and is authorized by The Episcopal Church to represent itself to the public as an Episcopal diocese.

41.     Bishop vonRosenberg has been duly empowered, appointed, and authorized to act as a bishop of The Episcopal Church as provided by the Church's Constitution and Canons.

42.     Bishop vonRosenberg has been and is ordained as a bishop of The Episcopal Church with full authority to act as such consistent with the Church's Constitution and Canons.

43.     As part of Bishop vonRosenberg's ordination service, he made a declaration, which is required to be made by all bishops of The Episcopal Church, that he would "solemnly engage to conform to the Doctrine, Discipline, and Worship of The Episcopal Church."

44.     Bishop vonRosenberg served as The Episcopal Church's duly elected, installed, and authorized Provisional Bishop of the Associated Diocese from January 26, 2013 to September 10, 2016.

45.     During that time, Bishop vonRosenberg represented and advertised himself and his services as a "Bishop" of an "Episcopal" "Diocese" in a variety of contexts and ways in interstate commerce, with the full authority given to him by The Episcopal Church and the Associated Diocese.

46.     Bishop vonRosenberg is currently a bishop of The Episcopal Church but without a current assignment to serve in a particular place.

47.    Bishop Adams is a duly elected, installed and empowered bishop of The Episcopal Church.

48.    As part of Adams' ordination service, he made a declaration, which is required to be made by all bishops of The Episcopal Church, that he would "solemnly engage to conform to the Doctrine, Discipline, and Worship of The Episcopal Church."

49.    Bishop Adams succeeded Bishop vonRosenberg and has served as The Episcopal Church's authorized Provisional Bishop in the Associated Diocese from September 10, 2016 to the present.

50.    During that time, Bishop Adams has represented to the public and advertised himself and his services as a "Bishop" of an "Episcopal" "Diocese" in a variety of contexts and ways in interstate commerce, under the authorization of The Episcopal Church and the Associated Diocese.

51.    The public has correctly and fairly perceived Bishop vonRosenberg's, and his successor, Bishop Adam's, public representations and advertisements as evidence of their authority and affiliation as bishops of a diocese of The Episcopal Church; and likewise, that the nature, characteristics, and qualities of the services they provide are consistent with those prescribed and sanctioned by The Episcopal Church.

52.    The public has also correctly and fairly perceived the Associated Diocese's representations and advertisements as evidence of its authority and affiliation as a diocese of The Episcopal Church; and likewise, that the nature, characteristics, and qualities of the services it provides are consistent with those prescribed and sanctioned by The Episcopal Church.

**F.    Unauthorized, False, and Misleading Advertising**

53.    Bishop Lawrence is a former bishop of The Episcopal Church.

54.    Bishop Lawrence was ordained, empowered, and authorized to act as a bishop of The Episcopal Church in 2008.

55.    As part of Bishop Lawrence's ordination as a bishop of The Episcopal; Church, he made a declaration, which is required to be made by all bishops of The Episcopal Church, that he would "solemnly engage to conform to the Doctrine, Discipline, and Worship of The Episcopal Church."

56.    Bishop Lawrence was authorized by The Episcopal Church to serve as The Episcopal Church's bishop in its diocese in South Carolina and did serve in such capacity from 2008 to 2012.

57.    Bishop Lawrence renounced his affiliation in and with The Episcopal Church in 2012.

58.    Bishop Lawrence was removed from his office as a bishop in the Church by The Episcopal Church in 2012.

59.    The Episcopal Church authorized Bishop vonRosenberg to replace Bishop Lawrence as the bishop of the diocese and to serve as the Provisional Bishop of the diocese.

60.    In a sworn deposition in other litigation, Bishop Lawrence testified: "I am no longer a bishop of The Episcopal Church." Deposition of Mark J. Lawrence, dated June 3, 2014, at page 173, lines 14 and 15.

61.    Bishop Lawrence nevertheless continued and continues to represent to the public and advertise himself and his services as a "Bishop" of an "Episcopal" "Diocese"

in a variety of contexts and ways in interstate commerce, unauthorized by The Episcopal Church.

    62.    For example, Bishop Lawrence continues to advertise himself as:

    a.    "The Bishop of The Protestant Episcopal Church in the Diocese of South Carolina," and variations and abbreviations of that title.

    b.    "XIV Bishop of the Diocese of South Carolina," and variations and abbreviations of that title.

    c.    "The Bishop of The Episcopal Diocese of South Carolina," and variations and abbreviations of that title.

    63.    Bishop Lawrence's advertisements are made in interstate commerce both in-state and out-of-state, in forums and mediums such as the Internet, printed newsletters, sermons and public speeches, conferences, and meetings.

    64.    The public falsely perceives Bishop Lawrence's representations and advertisements as indicators of his authority and affiliation as a bishop of a diocese of The Episcopal Church; and likewise, that the nature, characteristics, and qualities of the services he provides are consistent with those prescribed and sanctioned by The Episcopal Church.  Bishop Lawrence is confusing and misleading the public regarding his authority and affiliation with The Episcopal Church and the Associated Diocese and the services he provides, to the Associated Diocese's and Bishop vonRosenberg's and Bishop Adam's detriment.

**G.**    **Defendants' Corporate Pretext**

65.    Dating back to the eighteenth century, notwithstanding the Civil War, The Episcopal Church has authorized a diocese to operate in the geographic region of eastern South Carolina.

66.    In 1973, in response to the erosion of the legal doctrine of charitable immunity, authorized leaders of The Episcopal Church's authorized diocese in eastern South Carolina formed a South Carolina corporation by the name "The Protestant Episcopal Church in South Carolina" (referred to herein as the "Corporation").

67.    According to its corporate charter: "The purpose of the said proposed Corporation is to continue the operation of an Episcopal Diocese under the Constitution and Canons of The Protestant Episcopal Church in the United States of America."

68.    In accordance with its corporate charter, the Corporation operated as an authorized diocese of The Episcopal Church for at least the first three decades of its existence.

69.    In 2010, Bishop Lawrence executed an amendment of the corporate charter, repurposing the Corporation as follows: "The purpose of the said proposed Corporation is to continue operation under the Constitution and Canons of The Protestant Episcopal Church in the Diocese of South Carolina."

70.    In 2012, Bishop Lawrence announced that the Corporation had disassociated from The Episcopal Church.

71.    Bishop Lawrence has alleged that his authority to advertise himself and his services as a "Bishop" of an "Episcopal" "Diocese" derives from that repurposed and disaffiliated Corporation.

72.    Bishop Lawrence and his followers hold themselves out as maintaining control of that Corporation and they improperly use the name of the Corporation to refer to themselves.

**H.    Reorganization Of The Episcopal Church's Authorized and Designated Diocese: "The Episcopal Church in South Carolina"**

73.    After Bishop Lawrence and his faction purported to repurpose and disaffiliate the Corporation, in 2012, The Episcopal Church authorized and facilitated the reorganization of its diocese in the eastern region of South Carolina.

74.    In compliance with a consent order entered in state court, The Episcopal Church authorized the continued operations of its diocese under the name of "The Episcopal Church in South Carolina" with the full authorization and empowerment given to it by The Episcopal Church consistent with the Constitution and Canons of the Church.

75.    Bishops vonRosenberg and Adams have served as Provisional Bishops of the continuing and reorganized diocese, operating under the name The Episcopal Church in South Carolina, with and under the authorization of The Episcopal Church.

76.    The continuing and reorganized diocese, referred to herein as the Associated Diocese, of The Episcopal Church comprises approximately 67 clergy, 31 parishes, and 5,500 parishioners in South Carolina, who have remained loyal to The Episcopal Church and have objected to Bishop Lawrence's purported repurposing and disaffiliation of the Corporation.

**I.    Irreparable Harm Caused By Bishop Lawrence**

77.    Bishop Lawrence has been and is confusing and misleading the public regarding his authority and affiliation with The Episcopal Church and the services he

provides, to the Associated Diocese's and Bishops vonRosenberg's and Adam's detriment.

78.     As a result, members of the public, particularly consumers of religious services, have formed and are likely to continue to form a variety of false and misleading impressions and beliefs about the Associated Diocese and Bishop Lawrence and Bishops vonRosenberg and Adams.

79.     These false impressions and beliefs, caused by Bishop Lawrence's false and misleading advertising, have and are detrimentally affecting the Associated Diocese's and Bishop vonRosenberg's and Bishop Adams' reputations, performances, and abilities to communicate in interstate commerce with the public as an authorized diocese and bishop of a diocese of The Episcopal Church, particularly with respect to consumers of religious services, including charitable donors, other bishops, clergy, parishes, and parishioners.

80.     Furthermore, Bishop Lawrence's conduct impedes the Associated Diocese and Bishop vonRosenberg, formerly, and Bishop Adams, presently, in exercising their spiritual and temporal duties and restricts their abilities to exercise the authority of their roles and offices in The Episcopal Church.  Bishop Lawrence's conduct diverts to him and his followers individuals who would otherwise join and/or financially support the Associated Diocese's and Bishop vonRosenberg's and Bishop Adams' mission.  Bishop Lawrence has misappropriated the goodwill and reputation of the Associated Diocese and Bishop vonRonsenberg and Bishop Adams.

81.     This ongoing harm is irreparable because there will be no fully adequate way to correct and redress all of the public confusion and false perceptions that have taken hold in this state and across the country.

**J.      The Participation And Involvement Of The Lawrence Diocese, The Trustees Corporation, And The Lawrence Parishes**

82.     Defendants Lawrence, Does 1-10, and the Lawrence Diocese, without authorization by The Episcopal Church and the Associated Diocese, have represented to the public that the Lawrence Diocese is an "Episcopal" "Diocese," and used various names and marks in association with the services it provides, including without limitation the marks THE EPISCOPAL DIOCESE OF SOUTH CAROLINA and THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF SOUTH CAROLINA.

83.     The Trustees Corporation, without authorization by The Episcopal Church and the Associated Diocese, has provided assets to defendant Lawrence, Does 1-10, and the Lawrence Diocese, including the use of historic buildings traditionally identified as "Episcopal Church" buildings, for their use in representing to the public that defendant Lawrence is a "Bishop" of an "Episcopal" "Diocese" and the Lawrence Diocese is an "Episcopal" "Diocese."   The Trustees Corporation has taken these actions while at the same time holding itself out as a corporation serving the interests of an "Episcopal" "Diocese."

84.     Defendants Lawrence, Does 1-10, and the Lawrence Diocese have adopted and continue to use marks, including, but not limited to, the marks THE EPISCOPAL DIOCESE OF SOUTH CAROLINA and THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF SOUTH CAROLINA, in commerce in connection with the provision, sale, offering for sale, or distribution of goods and/or

services, that are likely to cause confusion or mistake with, have caused confusion or mistake with, and infringe upon The Episcopal Church's and the Associated Diocese's trademark rights.

85.     Defendants Lawrence, Does 1-10, and the Lawrence Diocese have adopted and continue to use the infringing marks identified herein, including but not limited to THE EPISCOPAL DIOCESE OF SOUTH CAROLINA and THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF SOUTH CAROLINA without the consent of The Episcopal Church or the Associated Diocese.

86.     Defendants Lawrence, Does 1-10, and the Lawrence Diocese have continually referred to many of the Lawrence Parishes as "Episcopal" churches, and they have likewise failed to instruct those churches to discontinue referring to themselves as "Episcopal" churches.

87.     Defendants the Lawrence Parishes have held themselves out as "Episcopal" churches and have referred to their being affiliated with an "Episcopal" "Diocese," including by using in those contexts the infringing marks THE EPISCOPAL DIOCESE OF SOUTH CAROLINA and THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF SOUTH CAROLINA without the consent of The Episcopal Church, and by conducting their operations in buildings that have historically been identified as "Episcopal" churches connected to The Episcopal Church and its diocese, the Associated Diocese.

88.     As a result of Defendants' actions alleged above, members of the public, particularly consumers of religious services, have been and are likely to be confused about the connection between the services that defendants Lawrence, the Lawrence

Diocese, and the Lawrence Parishes provide and the goods and services offered by The

Episcopal Church and the Associated Diocese, including, but not limited to, (a) whether

defendants Lawrence, the Lawrence Diocese, or the Lawrence Parishes are providing

services in connection with The Episcopal Church or the Associated Diocese, (b) whether

defendant Lawrence holds any position of authority within The Episcopal Church or the

Associated Diocese, (c) whether defendant Lawrence, the Lawrence Diocese, or the

Lawrence Parishes have any affiliation with The Episcopal Church or its Associated

Diocese (d) the identity of the leadership of the Associated Diocese, (e) the relationship

between defendant Lawrence on the one hand and the plaintiff Bishops on the other, and

(f) who is authorized to use the trademarks owned by The Episcopal Church and the

Associated Diocese.

89.    Defendants' infringing activities constitute repeated violations of the

Lanham Act, 15 U.S.C. § 1125(a).  The ongoing harm to the Associated Diocese and

Bishops Adams and vonRosenberg from Defendants' actions is irreparable.  Without an

injunction, there will be no adequate way to correct and redress all of the public

confusion and false perceptions that have taken hold in this State and across the country

due to defendants' infringement of The Episcopal Church's and the Associated Diocese's

and Bishop vonRosenberg's and Bishop Adams' rights.

## COUNT I

### (False And Misleading Advertising Under the Lanham Act)

### (Against All Defendants)

90.     The Associated Diocese and Bishop vonRosenberg and Bishop Adams repeat, reallege, and incorporate by reference each and every allegation in the foregoing paragraphs as though fully set forth herein.

91.     Defendants' conduct and acts, as alleged herein, constitute false and misleading advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

92.     Defendants have used words, terms, names, and symbols, and combinations thereof, and have made false and misleading descriptions and representations of fact, which have caused confusion, mistake, and deception as to their and the Associated Diocese's and Bishop vonRosenberg's and Bishop Adams' affiliation, connection, or association with each other and with The Episcopal Church and its diocese, and as to the origin, sponsorship, and approval of their and the Associated Diocese's and Bishop vonRosenberg's and Bishop Adams' services and commercial activities.

93.     Defendants have used words, terms, names, and symbols, and combinations thereof, and have made false and misleading descriptions and representations of fact in commercial advertising and promotion, misrepresenting the nature characteristics, qualities, and geographic origin of their and the Associated Diocese's and Bishop vonRosenberg's and Bishop Adams' services and commercial activities.

94.     Defendants have engaged in commercial advertising and promotion by disseminating promotional communications and/or business solicitations to a significant segment of the public.  Such promotional communications and/or business solicitations: constitute commercial speech because they propose a commercial transaction; were made

by Defendants for the purpose of influencing the public to believe that they represent The Episcopal Church and its diocese in eastern South Carolina and are the ecclesiastical authorities of the same; were disseminated in sufficient numbers as to constitute advertising or promotion to consumers of religious services and charitable donors; and contained false and misleading representations about their affiliation, connection, or association with The Episcopal Church and its diocese in eastern South Carolina.

95.     Defendants' false and misleading commercial advertising, representations, and/or promotions were designed and are likely to influence the financial decisions of consumers of religious services and charitable donors, and upon information and belief, have resulted in charitable donations being misdirected to Defendants that were intended to be directed to the Associated Diocese and Bishop vonRosenberg and Bishop Adams.

96.     Defendants' false and misleading commercial advertising and/or promotions have damaged or are likely to damage the Associated Diocese and Bishop vonRosenberg and Bishop Adams through various means including but not limited to harm to reputation, loss of goodwill, and disruption of the Associated Diocese's and Bishop vonRosenberg's and Bishop Adam's spiritual and temporal duties.

97.     Defendants' false and misleading commercial advertising and/or promotions were made in interstate commerce and damaged the Associated Diocese's and Bishop vonRosenberg's and Bishop Adam's interstate reputation.

98.     Defendants' commercial advertising and/or promotions constitute a false designation of origin, sponsorship, or approval and a false description and representation as to the nature, characteristics, and/or qualities of their services and commercial activities.

99.    The Associated Diocese and Bishop vonRosenberg and Bishop Adams have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

100.    The Associated Diocese and Bishop vonRosenberg and Bishop Adams have no adequate remedy at law for Defendants' false and misleading commercial advertising and/or promotions.

101.    The Associated Diocese and Bishop vonRosenberg and Bishop Adams are entitled to injunctive relief against Defendants, pursuant to 15 U.S.C. § 1116.

## COUNT II

### (Trademark Infringement Under The Lanham Act)

### (Against All Defendants)

102.    The Associated Diocese and Bishop vonRosenberg and Bishop Adams repeat, reallege, and incorporate by reference each and every allegation in the foregoing paragraphs as though fully set forth herein.

103.    In 2010, The Episcopal Church's diocese in the eastern region of South Carolina, referred to herein as the Associated Diocese, applied for and registered four marks with the South Carolina Secretary of State, including the following marks (collectively referred to herein as the "State Registrations"):

e.    "The Protestant Episcopal Church in the Diocese of South Carolina";

f.    "The Diocese of South Carolina";

g.    "The Episcopal Diocese of South Carolina"; and

h.    The following seals (in color and black and white):

 

104.    The Episcopal Church's authorized diocese, the Associated Diocese, led first by Bishop vonRosenberg and currently by Bishop Adams, is the rightful owner of the marks reflected in the State Registrations.

105.    Defendants have used and continue to use the marks designated in the State Registrations in commerce, such as on websites, publications, signs, and other materials used to promote their religious services.

106.    Defendants' use of the marks designated in the State Registrations has been without the consent of The Episcopal Church and/or its authorized diocese, the Associated Diocese, currently operating as The Episcopal Church in South Carolina, formerly led by Bishop and currently led by Bishop Adams.

107.    Defendants' use of the marks designated in the State Registrations has been in direct and intentional opposition to demands made by The Episcopal Church and/or its authorized diocese, the Associated Diocese, currently operating as The Episcopal Church in South Carolina, formerly led by Bishop vonRosenberg and currently led by Bishop Adams.

108.    Defendants' use of the marks designated in the State Registrations has caused actual and likely confusion, mistakes, and deception as to Defendants' affiliation, connection, association, sponsorship, authorization, or approval with respect to The Episcopal Church and its authorized diocese, the Associated Diocese, currently operating

as The Episcopal Church in South Carolina, formerly led by Bishop vonRosenberg and currently led by Bishop Adams.

109.    Defendants' unauthorized and intentional use of the marks designated in the State Registrations constitutes trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

110.    Defendants' infringement has caused and, unless restrained by this Court, will continue to cause the Associated Diocese and Bishop vonRosenberg and Bishop Adams irreparable injury.

111.    The Associated Diocese and Bishop vonRosenberg and Bishop Adams have no adequate remedy at law for Bishop Lawrence's infringement.

112.    The Associated Diocese and Bishop vonRosenberg and Bishop Adams are entitled to injunctive relief against Defendants, pursuant to 15 U.S.C. § 1116.

## COUNT III

### (Trademark Infringement Under South Carolina Law)

### (Against All Defendants)

113.    The Associated Diocese and Bishop vonRosenberg and Bishop Adams repeat, reallege, and incorporate by reference each and every allegation in the foregoing paragraphs as though fully set forth herein.

114.    Defendants' unauthorized and intentional use of the marks designated in the State Registrations constitutes trademark infringement in violation of S.C. Code Ann. §§ 39-15-1105, *et seq.*

115.    The Associated Diocese and Bishop vonRosenberg and Bishop Adams are entitled to injunctive relief against Defendants, pursuant to S.C. Code Ann. § 39-15-1170.

**COUNT IV**

**(Cancellation or Transfer of State Registrations)**

**(Against All Defendants)**

116.    The Associated Diocese and Bishop vonRosenberg and Bishop Adams repeat, reallege, and incorporate by reference each and every allegation in the foregoing paragraphs as though fully set forth herein.

117.    Any state trademark registrations that may be held by the Defendants for marks that are confusingly similar to the Church's marks and the Associated Diocese's marks identified herein should be cancelled, pursuant S.C. Code Ann. §§ 39-15-1145 and 1175, or in the alternative, transferred to the Church and the Associated Diocese.

.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, based upon the foregoing, the Associated Diocese and Bishop vonRosenberg and Bishop Adams hereby respectfully request that the Court:

1.    Declare that Defendants have engaged in false advertising and trademark infringement under the Lanham Act and South Carolina law.

2.    Declare that the Associated Diocese and Bishops vonRosenberg and Adams are entitled to use the marks designated in the State Registrations.

3.    Immediately and permanently enjoin Defendants and those acting under their direction and control and all others acting in concert and participation with Defendants from:

        a.    using words, terms, names, and symbols, and combinations thereof, and making false and misleading descriptions and

representations of fact, which cause or are likely to cause confusion, mistake, and deception as to their and the Associated Diocese's and Bishop vonRosenberg's and Bishop Adams' affiliation, connection, or association with each other and with The Episcopal Church, and as to the origin sponsorship and approval of their and the Associated Diocese's and Bishop vonRosenberg's and Bishop Adams' services and commercial activities;

b.    using words, terms, names, and symbols, and combinations thereof, and making false and misleading descriptions and representations of fact in commercial advertising and promotion, misrepresenting the nature characteristics, qualities, and geographic origin of their and the Associated Diocese and Bishop vonRosenberg's and Bishop Adams' services and commercial activities;

c.    representing by any means whatsoever, directly or indirectly, that they are affiliated with or connected to The Episcopal Church or its diocese in South Carolina, the Associated Diocese, or otherwise taking any action likely to cause confusion, mistake, or deception on the part of the public as to the origin, sponsorship, approval, nature, characteristics, and/or qualities of their services and activities, and those of the Associated Diocese and Bishop vonRosenberg and Bishop Adams; and

       d.      continuing to disseminate commercial advertising and/or promotions that make false or misleading representations that they are associated with The Episcopal Church or its diocese in eastern South Carolina, the Associated Diocese, or that the Associated Diocese and Bishop vonRosenberg, formerly, and Bishop Adams, currently, are not affiliated with The Episcopal Church or its diocese in eastern South Carolina; and

       e.      using the marks designated in the State Registrations.

4.      Cancel any trademark registrations that may be held by the Defendants for marks that are confusingly similar to the Church's marks and the Associated Diocese's marks identified herein, pursuant S.C. Code Ann. §§ 39-15-1145 and 1175, or in the alternative, transfer such trademark registrations to the Church and the Associated Diocese.

5.      Award the Associated Diocese and Bishop vonRosenberg and Bishop Adams their costs, including reasonable attorneys' fees and disbursements in this action pursuant to 15 U.S.C. § 1117 and S.C. Code Ann. § 39-15-1170.

6.      Direct Defendants to file with this Court and serve on the Associated Diocese and Bishop vonRosenberg and Bishop Adams within thirty (30) days after the service of the injunction a report, in writing and under oath, that describes in detail the manner and form in which Defendants have complied with the orders of this Court;

7.      Award such other relief as the Court deems fair and equitable.

Dated:  May 9, 2018                    Respectfully submitted,


                                       /s/ Thomas S. Tisdale, Jr.
                                       Thomas S. Tisdale, Jr. Bar No. 4106
                                       Jason S. Smith, Bar No. 11387
                                       HELLMAN YATES & TISDALE
                                       105 Broad Street, Third Floor
                                       Charleston, South Carolina  29401
                                       Telephone:  (843) 266-9099
                                       Facsimile:  (843) 266-9188
                                       tst@hellmanyates.com
                                       js@hellmanyates.com

*Counsel for Plaintiffs The Episcopal Church in South Carolina,*
*The Right Reverend Charles G. vonRosenberg*
*and The Right Reverend Gladstone B. Adams, III*