| | |
|---|---|
| The Right Reverend Charles G. vonRosenberg, et al., | Civil Action No. 2:13-587-RMG |
| Plaintiffs, | |
| | **ORDER AND OPINION** |
| The Episcopal Church, | |
| Plaintiff in Intervention v. | |
| The Right Reverend Mark J. Lawrence, et al., | |
| Defendants. | |

This matter is before the Court on two Motions to Dismiss (Dkt. Nos. 315, 316) by Christ the King, Waccamaw ("Christ the King") and The Vestry and Church Wardens of The Episcopal Church of The Parish of Prince George Winyah ("Prince George Winyah"). For the reasons set forth below, the Court denies each Motion to Dismiss.

**I.    Background**

Plaintiffs allege that The Episcopal Church ("TEC") removed Bishop Lawrence as the Bishop of the Diocese of South Carolina in 2012 and installed Bishop vonRosenberg in his place, and since that time Bishop Lawrence, the Diocese of South Carolina ("Lawrence Diocese"), the Trustees of the Protestant Episcopal Church in the Diocese of South Carolina, and fifty-five associated parishes (the "Lawrence Parishes") have continued to use marks owned by Plaintiffs and falsely advertised their affiliation with TEC. (Dkt. No. 146 at ¶¶ 58, 61 – 62, 82 – 87.)

On January 4, 2013, the Lawrence Diocese and certain associated churches and parishes sued TEC in the Dorchester County Court of Common Pleas seeking a determination of real and personal property rights. On March 5, 2013, Bishop vonRosenberg filed this federal action

-1-

alleging trademark infringement and false advertising. While this action was pending in federal court,[1] on February 3, 2015, a state court issued a final order in favor of the Lawrence Diocese. (Dkt. No. 86-6.) The Lawrence Diocese appealed.

On August 2, 2017, the South Carolina Supreme Court held that TEC owned most of the property at issue, reversing the Court of Common Pleas. *Protestant Episcopal Church in the Diocese of S.C. v. Episcopal Church*, 421 S.C. 211, 265, 806 S.E.2d 82, 111 (2017), *reh'g denied* (Nov. 17, 2017), *cert. denied sub nom. Protestant Episcopal Church in the Diocese of S.C. v. The Episcopal Church*, 138 S. Ct. 2623 (2018). The court also held that twenty-eight parishes associated with the Diocese held real and personal property in trust for the benefit of TEC. On the issue of service marks the court was fragmented. Acting Justice Pleicones and Justice Hearn found that the trial court erred in holding the Lawrence Diocese's state-registered trademarks prevail over TEC's federal trademarks. *Id.* at 231, 248. Chief Justice Beatty expressed no opinion on the state registered trademarks and stated that "I believe this determination should remain with the federal court." *Id.* at 249 n.28. Acting Justice Toal found that the Lawrence Diocese's service marks were validly registered under state law but that determination of the effect of federal trademark law on the marks should be decided in this federal proceeding. *Id.* at 290.

After the South Carolina Supreme Court's decision, this Court allowed TEC and the Episcopal Church in South Carolina ("ECSC") to intervene as plaintiffs. (Dkt. Nos. 87, 140.) On April 16, 2018, this Court allowed the Plaintiffs to amend their pleadings to assert false advertising and trademark infringement claims against the Lawrence Diocese, fifty-four parishes associated

---

[1] This Court previously abstained and stayed this action pending resolution of a related state-court action. The stay was reversed by the Fourth Circuit on February 21, 2017. *vonRosenberg v. Lawrence*, 849 F.3d 163, 165 (4th Cir. 2017).

with the Lawrence Diocese ("Lawrence Parishes"),[2] and the Trustees of the Protestant Episcopal Church in the Diocese of South Carolina. *vonRosenberg v. Lawrence*, No. CV 2:13-587-RMG, 2018 WL 1790827, at *3 (D.S.C. Apr. 16, 2018). The Court prohibited Plaintiffs from amending their pleadings to include trust claims. *Id.* at *4.

Plaintiffs Bishop vonRosenberg, Bishop Adams[3] and the ECSC filed their Third Amended Complaint alleging false advertising and trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), trademark infringement under South Carolina Law, S.C. Code Ann. §§ 39-15-1105, *et seq.*, and Cancellation or Transfer of the State Trademark Registrations under S.C. Code Ann. §§ 39-15-1145 and 1175. (Dkt. No. 146 at ¶¶ 90 – 117.) Plaintiffs seek declaratory and injunctive relief, in addition to cancellation of the state trademarks and attorneys' fees and costs. (*Id.* at 31 – 33.) Plaintiff TEC, in their Second Amended Complaint, plead two counts under the Lanham Act for trademark infringement and dilution. (Dkt. No. 150.) TEC seeks declaratory and injunctive relief, in addition to any attorneys' fees and costs. (Dkt. No. 150 at 13.)

Christ the King and Prince George Winyah (collectively, the "Moving Defendants") are two of the Lawrence Parishes identified in the Plaintiffs' amended complaints. Prince George Winyah was established in 1721, and was incorporated by an Act of the South Carolina legislature in 1788 with the name "The Vestry and Church Wardens of the Episcopal Church of the Parish of Prince George Winyaw." (Dkt. Nos. 381 at 1, 388-3.) Christ the King was incorporated on June 7, 2010. (Dkt. No. 315-1 at 8.) Neither Prince George Winyah nor Christ the King ever acceded to the Dennis Canon in writing and, under the controlling opinion of Chief Justice Beatty, they

---

[2] The amended complaints name fifty-five parishes. (Dkt. Nos. 146 at ¶ 9, 150 at ¶ 8.)

[3] Plaintiff Bishop Adams is now the Provisional Bishop of the ECSC, succeeding Bishop vonRosenberg. (Dkt. No. 146 at ¶ 3.)

maintained ownership rights to their property. *Protestant Episcopal Church*, 421 S.C. 211 at 251, 265 n.49.

Prince George Winyah and Christ the King now seek to dismiss TEC's Second Amended Complaint and Bishop vonRosenberg, Bishop Adams and the ECSC's Third Amended Complaint, arguing that they: (i) are barred by the statute of limitations, (ii) are barred by the Tenth Amendment to the United State Constitution, (iii) impermissibly assert trust based claims, (iv) that the state trademark claims are precluded by the South Carolina Supreme Court's decision, and (v) that the Plaintiffs fail to make out claims specifically against Prince George Winyah and Christ the King. (Dkt. Nos. 315-1, 316-1.) Plaintiffs oppose the motions. (Dkt. No. 341.)

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.... Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the

complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. <u>Discussion</u>

#### A. Statute of Limitations

As a threshold matter, Plaintiffs claims are not barred by a statute of limitations. Plaintiffs allege that the Lawrence Parishes, including Christ the King and Prince George Winyah, have used certain infringing marks, such as "THE EPISCOPAL DIOCESE OF SOUTH CAROLINA and THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF SOUTH CAROLINA...." (Dkt. Nos. 146 at ¶ 87; 150 at ¶ 33.) The Plaintiffs describe the alleged violations as "repeated" and "ongoing." (Dkt. Nos. 146 at ¶ 89; 150 at ¶ 35.)

Plaintiffs are correct that the Lanham Act borrows "analogous state limitations period." *Secret of the Islands, Inc v. Hymans Seafood Co. Inc.*, No. 2-17-CV-00342, 2018 WL 1566706, at *3 (D.S.C. Mar. 30, 2018) (citations omitted). However, the statute of limitations only affects claims for liabilities arising outside of the applicable limitations period. *See id.* Here, Plaintiffs solely seek prospective remedies, namely injunctive and declaratory relief, and do not seek any damages. These claims did not arise before any limitations periods, and instead the complaints request an injunction against and a declaration regarding alleged ongoing violations. (Dkt. Nos. 146 at ¶ 89; 150 at ¶ 35.) Therefore, since Plaintiffs do not seek damages beyond the limitations period and seek relief for allegedly ongoing violations, their claims are not barred by the statute of limitations. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001) ("[T]he statute of limitations does not shield the defendant from liability for wrongful acts actually committed during the limitations period, and its rationale applies equally to trademark

-5-

infringement claims brought under the Lanham Act.... [E]ven in equity under the Lanham Act, laches does not bar a claim for prospective injunctive relief."); *Statute of limitations*, 6 McCarthy on Trademarks and Unfair Competition § 31:33 (5th ed.) ("Usually, infringement is a continuing wrong, and a statute of limitations is no bar except as to damages beyond the statutory period.").[4]

### B. Trust Claims

The Moving Defendants also argue that although this Court prohibited the Plaintiffs from asserting trust claims, the amended complaints "allege trust claims in the guise of false advertising/trademark claims...." (Dkt. Nos. 315-1 at 1; 316-1 at 3.) To support their argument, Plaintiffs point to paragraphs in the amended complaints that allege that the Defendants continue to use "buildings that have traditionally been identified as 'Episcopal.'" (Dkt. Nos. 146 at ¶¶ 83, 87; 150 at ¶¶ 29, 33.) The Fourth Circuit has explained that in analyzing whether the use of a mark is "likely to cause confusion among consumers," a court should consider "the similarity of the facilities used in the businesses...." *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 324 (4th Cir. 2015). *See also Fuel Clothing Co. v. Nike, Inc.*, 7 F. Supp. 3d 594, 609 (D.S.C. 2014) (same). The fact that a company later occupied the same building as a plaintiff is a relevant when analyzing the similarity of facilities. *See Putt-Putt, LLC v. 416 Constant Friendship, LLC*, 936 F. Supp. 2d 648, 658 (D. Md. 2013) ("Due to Defendant 416 CF's use of the same building that once housed a former authorized Putt–Putt franchise, the similarity of facilities factor is easily satisfied.").

Where the test for likelihood of confusion under the Lanham Act requires analyzing the similarity of facilities, it was proper for Plaintiffs to include allegations regarding the use of certain buildings in their complaint.

---

[4] The Moving Defendants' argument that an injunction issued by the Dorchester County Court of Common Pleas bars Plaintiffs claims fails for the same reasons. Plaintiffs here seek relief for allegedly ongoing violations. Therefore, an injunction from 2015 does not affect Plaintiffs claims.

-6-

## C. Claim Preclusion and Issue Preclusion

The Moving Defendants argue that claim preclusion and issue preclusion further prevent Plaintiffs from raising their trademark claims under the Lanham Act and South Carolina law. (Dkt. Nos. 315-1 at 5; 316-1 at 5.) Regarding claim preclusion, the Moving Defendants argue that because the South Carolina Supreme Court issued a final ruling on trust claims, the Plaintiffs are precluded from re-litigating their interest in the Moving Defendants' buildings. (*Id.*) To begin with, the Moving Defendants argument hinges on the alleged re-litigation of the issue of the parties' interest in the parish buildings rather than the re-litigation of any particular cause of action or claim, and therefore this argument is not amenable to claim preclusion. *See Jones v. S.E.C.*, 115 F.3d 1173, 1178 (4th Cir. 1997) (party must establish the "same cause of action" in both the earlier and later suit). Furthermore, Plaintiffs are not asserting trust claims in this case or contesting ownership rights to the Moving Defendants' buildings. Therefore claim preclusion does not apply.

Regarding issue preclusion, the Moving Defendants argue that Christ the King and Prince George Winyah's rights to their buildings were actually litigated and determined in the prior state court action. (Dkt. Nos. 315-1 at 6; 316-1 at 6.) As with claim preclusion, Plaintiffs are not contesting Christ the King or Prince George Winyah's ownership rights to their real and personal property, and instead are contesting the ownership and use of certain registered and unregistered marks. Therefore, issue preclusion is inapplicable here.

Finally, the Moving Defendants argue that this Court is precluded from hearing Plaintiffs' state trademark claims. (Dkt. Nos. 315-1 at 3 n.2; 316-1 at 3 n.2; 388 at 6 – 8.) The Moving Defendants focus on the fact that "there [was] no majority of three concurring opinions" on the South Carolina Supreme Court reversing the trial court's state trademark registration decision, and therefore the trial court's ruling regarding the state trademarks allegedly controls. (*Id.*) The

Moving Defendants are incorrect. Justice Pleicones and Justice Hearn explicitly ruled to reverse the trial court regarding the state registered trademarks. *Protestant Episcopal Church*, 421 S.C. 211 at 216, 248. Chief Justice Beatty, in the controlling opinion, ruled that he would "reverse in part" the trial court's decision. (*Id.* at 251.) Importantly, Chief Justice Beatty explained that his decision "express[ed] no opinion concerning the rights to the service marks," and instead left the decision to this Court. *Id.* at 251 n. 28 ("[T]his determination should remain with the federal court."). Chief Justice Beatty drew no distinction between the state and federal trademark claims, and instead explicitly deferred all questions regarding the rights to the service marks to this Court, reversing the trial court's attempt to rule on those issues. This Court is therefore not precluded from hearing these issues.

### D. Prior Incorporation by South Carolina

The Moving Defendants further argue that principles of federalism enshrined in the Tenth Amendment prohibit the Plaintiffs from pursuing trademark claims against Prince George Winyah. As describe above, Prince George Winyah was established by the South Carolina General Assembly in 1721, and later incorporated by an Act of the South Carolina legislature in 1788 with the name "The Vestry and Church Wardens of the Episcopal Church of the Parish of Prince George Winyaw." (Dkt. Nos. 381 at 1, 388-3.) However, the allegations in the complaints are not that Prince George Winyah simply has the word "Episcopal" in their name. Indeed, the Third Amended Complaint acknowledges that the use of a word such as "Episcopal" may be appropriate where it includes "clear differentiating words or disclaimers," which may apply to a parish with such a storied history as Prince George Winyah. (Dkt. No. 146 at ¶ 14.)

Instead, Plaintiffs allege that Prince George Winyah and the other Lawrence Parishes hold themselves out as "Episcopal" churches in an "Episcopal" "Diocese" by using those phrases in conjunction with allegedly infringing marks, such as the "The Episcopal Diocese of South

Carolina" and "The Protestant Episcopal Church in the Diocese of South Carolina." (Dkt. Nos. 146 at ¶ 87, 150 at ¶ 33.) Prince George Winyah's prior state incorporation including the word "Episcopal" does not prohibit trademark claims premised on their alleged use of multiple unrelated infringing marks. *See Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co.*, 371 F.2d 251, 254 (7th Cir. 1966) ("It can no longer be argued that in allowing incorporation under its laws, a state thereby intends to license the commission of what would otherwise be a tortious act."). Plaintiffs can similarly pursue claims against Christ the King for use of the allegedly infringing marks. (Dkt. No. 315-1 at 8.)

### E. Sufficiency of Pleaded Facts

Finally, the Moving Defendants allege that the Second Amended Complaint and Third Amended Complaint are impermissible "shotgun pleadings" since they make identical claims against all Defendants. (Dkt. Nos. 315-1 at 13, 316-1 at 13.) "A Shotgun pleading is '[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading.'" *Hill v. Stryker Sales Corp.*, No. 4:13-CV-0786-BHH, 2014 WL 4198906, at *2 (D.S.C. Aug. 20, 2014) (citations omitted). The Moving Defendants do not contest that Plaintiffs have not alleged sufficient facts generally to make out their claims for trademark violations under state and federal law, and instead fault Plaintiffs for failing to allege specific facts as to each of the different Defendants since "[e]ach is a distinct legal entity, in a different location, with a distinct history, etc." (Dkt. No. 388 at 5.)

Under the Federal Rules of Civil Procedure, a Complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a). This requires "that [the] pleadings contain...the basis for a plaintiff's claim *against each defendant*." *Wiley v. South Carolina*, No. 6:18-CV-0694-BHH-KFM, 2018 WL 1998994, at *3 (D.S.C. Mar. 26, 2018) (emphasis added), *report and recommendation adopted*, No. 6:18-CV-00694-AMQ,

2018 WL 1994250 (D.S.C. Apr. 27, 2018). Plaintiffs have met that standard for Christ the King and Prince George Winyah

Plaintiffs allege specific facts regarding each of the Moving Defendants. Plaintiffs allege that prior to 2012, Christ the King and Prince George Winyah along with the other Lawrence Parishes were affiliated with TEC, and after 2012 became affiliated with a new religious organization lead by Bishop Lawrence. (Dkt. Nos. 146 at ¶ 9, 150 at ¶ 8.) After alleging their ownership of multiple marks, Plaintiffs allege that all of the Lawrence Parishes, including Christ the King and Prince George Winyah, have continuously engaged in the same infringing activity. Namely, the Plaintiffs allege that the "Lawrence Parishes" use infringing marks, including, "THE EPISCOPAL DIOCESE OF SOUTH CAROLINA and THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF SOUTH CAROLINA without the consent of The Episcopal Church...." (Dkt. Nos. 146 at ¶ 87, 150 at ¶ 33.) Plaintiffs have therefore identified each defendant, the alleged time at which the Moving Defendants began their infringing activities, and the specific actions that allegedly constitute continuing violations.

The Moving Defendants do not prevail on their motion simply because they allegedly engaged in the same infringing activity as other defendants, nor are the Plaintiffs required to repeat Paragraph 33 of the Second Amended Complaint or Paragraph 87 of the Third Amended Complaint fifty-five times because each parish allegedly uses the same marks. Ultimately, Plaintiffs will need support these allegations and present proof for each of the Lawrence Parishes. Nonetheless, at this stage, Plaintiffs complied with Rule 8(a) and pleaded sufficient specific facts regarding each defendant to survive a motion to dismiss.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Motions to Dismiss (Dkt. Nos. 315, 316) by Christ the King, Waccamaw and The Vestry and Church Wardens of The Episcopal Church of The Parish of Prince George Winyah.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

August 23, 2018
Charleston, South Carolina