# Exhibit 1

EXPERT REPORT OF HAL PORET IN MATTER OF
THE RIGHT REVEREND CHARLES VONROSENBERG ET AL. AND
THE EPISCOPAL CHURCH (PLAINTIFF-IN-INTERVENTION) V.
THE RIGHT REVEREND MARK J. LAWRENCE ET AL.

*******************************

SURVEY TO ASSESS THE EXTENT TO WHICH THE TERMS
"THE EPISCOPAL CHURCH" AND "EPISCOPAL CHURCH" FUNCTION AS
GENERIC TERMS IN THE CONTEXT OF RELIGIOUS INSTITUTIONS

REPORT PREPARED FOR:
McNair Law Firm

PREPARED BY:
Hal Poret
142 Hunter Ave
Sleepy Hollow, NY 10591



April 2018

# *TABLE OF CONTENTS*

                                                                                    Page #

BACKGROUND AND PURPOSE ------------------------------------------------   3
STUDY AUTHORSHIP AND QUALIFICATIONS----------------------------   4
STUDY DESIGN-----------------------------------------------------------------   6
SUMMARY OF FINDINGS ----------------------------------------------------   17
METHODOLOGY-----------------------------------------------------------------   18
      THE RELEVANT UNIVERSE OF INTEREST ------------------------   18
      SAMPLING PLAN-------------------------------------------------------   22
      DATA PROCESSING --------------------------------------------------   25
      INTERVIEWING PROCEDURES----------------------------------------   25
      DOUBLE-BLIND INTERVIEWING -------------------------------------   25
      INTERVIEWING PERIOD----------------------------------------------   26
      QUALITY CONTROL -------------------------------------------------   26
DETAILED FINDINGS------------------------------------------------------------   29

THE FOLLOWING APPENDICES ARE PROVIDED SEPARATELY:
APPENDIX A:   CURRICULUM VITAE OF STUDY'S AUTHOR
APPENDIX B:   QUESTIONNAIRE
APPENDIX C:   SCREENSHOTS OF SURVEY
APPENDIX D:   SURVEY DATA FILE

## BACKGROUND AND PURPOSE

In connection with the above-captioned lawsuit, McNair Law Firm, P.A., counsel for Defendants, retained me to design and conduct a survey to assess the extent to which the terms "The Episcopal Church" and "Episcopal Church" function as generic terms, as opposed to trademarks. As detailed more fully below, the survey showed that both terms are more frequently perceived to be generic terms than trademarks.

In connection with designing the survey and preparing this report I reviewed the following materials: (1)Amended Complaint in VonRosenberg v. Lawrence matter; (2) Amended Complaint-In-Intervention in The Episcopal Church v. Lawrence matter; (3) Bishop Mark J. Lawrence's Amended Answer and Counterclims to Amended Complaint-In-Intervention; (4) Final Order of Court in Matter of The Protestant Episcopal Church in the Diocese of South Carolina et al. v. The Episcopal Church et al. (South Carolina State Court); (5) Expert Report of Robert Klein in South Carolina State Court matter. I also conducted various internet searches including the term "Episcopal" and examined the results, including materials relating to many churches that use the term "Episcopal" in their names.

The fee for conducting the surveys and preparation of the report is $40,000. This includes the fees paid to outside vendors I used to conduct the surveys. For any additional work on this matter, I am being compensated at my ordinary hourly rate of $625. My fees are not contingent on the nature of my opinions or the outcome of the matter.

## *AUTHORSHIP AND QUALIFICATIONS*

This study was designed, supervised, and implemented by Hal L. Poret, President at Hal Poret, LLC.

I have personally designed, supervised, and implemented approximately 1,000 surveys regarding the perceptions and opinions of consumers. Over 300 have involved consumer perception with respect to trademarks, and over 300 have been conducted online. I have personally designed numerous studies that have been admitted as evidence in legal proceedings and I have been accepted as an expert in survey research on numerous occasions by U.S. District Courts, the Trademark Trial and Appeal Board, the FTC, and the National Advertising Division of the Council of Better Business Bureaus (NAD).

I am a member of the American Association of Public Opinion Research, publisher of *Public Opinion Quarterly* and the *Journal of Survey Statistics and Methodology*; the International Trademark Association; and the National Advertising Division of the Council of Better Business Bureaus (NAD). I routinely conduct market research surveys for a variety of small to large corporations and organizations.

I have frequently spoken at major intellectual property and legal conferences on the topic of how to design and conduct surveys that meet legal evidentiary standards for reliability, including conferences held by the International Trademark Association (INTA), American Intellectual Property Law Association, Practicing Law Institute, Managing Intellectual Property, Promotions Marketing Association, American Conference Institute, and various bar organizations.

In addition to my survey research experience, I hold bachelors and masters degrees in mathematics and a J.D. from Harvard Law School.  Additional biographical material, including lists of testimony and publications, is provided in Appendix A.

Hal Poret

Dated:  April 15, 2018

## STUDY DESIGN

A total of 500 respondents participated in this online survey among individuals who are members of religious institutions or attend religious services.[1]

This survey was comprised of two separate Groups:

- One Group of 300 respondents were shown and questioned about the term THE EPISCOPAL CHURCH
- A second Group of a separate 200 respondents were shown and questioned about the term EPISCOPAL CHURCH

The survey employed the well-accepted Teflon format for assessing whether a term is generic. Following the Teflon format, respondents in the survey were shown a series of terms (including one of the two terms at issue) one at a time and for each term, respondents were asked if they believe the term is a trademark[2] of one specific organization (i.e. a trademark) or a category of various organizations (i.e. generic), if they know.

To control for response-order bias, two versions of the survey were administered, and each version was taken by half of all respondents in each Group. Version 1 of the survey first presented the concept a "trademark name," followed by a "category name." Meanwhile, Version 2 first presented the concept of a "category name," followed by a "trademark name."

---

[1] See the Sampling section of this report for more information regarding who qualified for and completed the survey.

[2] The term "trademark" was used in the survey rather than the term "brand" because it is my opinion that consumers would be unlikely to think of the name of a religious institution as a "brand." In my experience, the term "brand" is more typically associated with commercial goods and services and would be less likely to be attached to a religious institution. Accordingly, in order to be fair to the possibility that consumers might perceive "The Episcopal Church" to designate a particular religious organization, I used the term "trademark" rather than "brand."

As this was an online survey, all instructions and questions were displayed on respondents' computer screens and each question appeared on its own screen.

Version 1

After a series of initial screening questions, all respondents were prompted:

> This survey is about *trademark* names and *category* names. In a few moments you will be asked about a number of terms that you may or may not have seen or heard before. But first, please read the next two screens about what we mean by a *<u>trademark</u>* name and what we mean by a *<u>category</u>* name.

On a new screen, respondents were then informed:

> A <u>trademark name</u> is a name that identifies one specific organization. A trademark name can only be used by one organization, or by branches of that organization, to identify itself.
>
> On the other hand, a <u>category name</u> is a name that identifies a category that can include various organizations that are not affiliated with each other. A category name can be used by more than one organization to identify what type of organization they are.
>
> Please read the examples of trademark and category names on the next screens.

As shown above, I incorporated into the concept of a "trademark name" that the name identifies one particular organization <u>or branches of that organization</u>. This was done to ensure that respondents understood that a term that applies to various entities would still be a trademark term if those entities are branches of a single organization. Accordingly, respondents who believe "The Episcopal Church" designates a particular religious institution would understand it to be a

trademark name even if they believe there are various churches that are branches of The Episcopal Church.

Next, respondents were given some examples of trademark and category names in different areas. First:

> Please read this example of trademark and category names in the area of financial institutions.
>
> CHASE BANK is a trademark name, because it identifies one specific organization.
>
> On the other hand, SAVINGS BANK is a category name, because it identifies a category that includes various organizations.

Consistent with the definitions of trademark names given above, the example of CHASE BANK was provided to help make clear that a name that applies to many individual entities is still a trademark if those entities are branches of a single organization.

Respondents were then given the following instruction:

> Please read this example of trademark and category names in the area of political institutions.
>
> THE DEMOCRATIC NATIONAL COMMITTEE is a trademark name, because it identifies one specific organization.
>
> On the other hand, THE LIBERAL LEFT is a category name because it identifies a category that includes various organizations.

The terms THE DEMOCRATIC NATIONAL COMMITTEE and THE LIBERAL LEFT were included as examples so that respondents would understand that a

term that starts with the word "THE" could potentially fall into either category and so the term "THE" does not in and of itself determine whether or not a term is a trademark.  This helped avoid any bias of respondents to assume that the term "THE" automatically determines whether a term is a trademark.

Respondents were then asked:

> Do you understand the difference between a trademark name and a category name?
>
> - Yes
> - No
> - Don't know

Respondents who answered "Yes" continued with the interview.  Those who indicated they did not understand or were unsure about the concept of a "trademark name" versus "category name" were excluded from the survey.

Respondents were then given some names to test their understanding of the concept. First:

> Which type of name would you say **THE AMERICAN MEDICAL ASSOCIATION** is?
>
> - Trademark name
> - Category name
> - Don't know

Followed by:

Which type of name would you say **THE MEDICAL PROFESSION** is?

- Trademark name
- Category name
- Don't know

Respondents who correctly answered that THE AMERICAN MEDICAL ASSOCIATION is a trademark name and that THE MEDICAL PROFESSION is a category name continued with the survey.  Respondents who did not correctly answer both these questions were excluded.  This "mini-test" ensured that all respondents understood the concept of a trademark name and a category name and also ensured that they could properly apply those concepts to terms that began with "THE."

Respondents were then instructed:

> We would now like to ask you about a series of terms that you may or may not have seen or heard before in the area of <u>religious organizations or institutions</u>.
>
> For each term you are shown, please answer whether you think the term is a ***trademark*** or a ***category*** in the area of religious organizations or institutions. Or if you don't know, you may select that option.

One at a time, respondents were then shown one of five terms until all terms had been seen. As each term appeared on screen, respondents were asked:

> Do you think this is a ...

> - Trademark of one specific organization
> - Category of various organizations
> - Don't know

The first Group of 300 respondents was shown the following term at issue:

## THE EPISCOPAL CHURCH

Meanwhile, the second Group of 200 respondents instead saw the following term at issue:

## EPISCOPAL CHURCH

As is standard in the Teflon format, respondents were also shown other terms, consisting of equal numbers of trademark and category names.

All respondents were shown four additional terms. Two of the four additional terms presented are trademark names:

## THE FIRST PRESBYTERIAN CHURCH OF BETHLEHEM

And :

## INDEPENDENT METHODIST EPISCOPAL CHURCH

The other two terms are category names:

## EVANGELICAL CHURCH

And :

# THE CHRISTIAN CHURCH

Asking respondents about all four of these terms provided benchmarks for comparing the proportion of respondents who perceived THE EPISCOPAL CHURCH or EPISCOPAL CHURCH to be a trademark name or category name.

As shown above, one of the trademark terms included the word "The" and one of the category terms included the word "The." This again avoided any bias as to whether terms with the word "the" are trademarks or not.

There were two rotations for each Group in which the order of these terms was presented to respondents.

1) Half of all respondents in each of the two Groups were shown the term at issue (THE EPISCOPAL CHURCH or EPISCOPAL CHURCH) first – i.e. before seeing any of the other four terms. These respondents then also saw THE CHRISTIAN CHURCH last – i.e. after seeing the other four terms.
2) The other half of all respondents in each Group saw the term at issue last. These respondents then also saw THE CHRISTIAN CHURCH first.

The order of the three remaining terms shown in each Group was randomized for all respondents.

This set up ensured that half of all respondents in each Group saw the term at issue ahead of any other terms, while half of all respondents in each Group saw the term at issue after also seeing two other trademark names and two other category names.

Ultimately, this design accounted for any response bias due to the order in which the terms were presented.

This concluded the survey for respondents in Version 1.

<u>Version 2</u>

Respondents in Version 2 of each Group took an identical survey as those in Version 1 with the sole exception that the phrase "category name" was always presented ahead of the phrase "trademark name." This consistently occurred in three areas throughout the survey.

First, in Version 2, the phrase "category name" was presented ahead of "trademark name" in all descriptions or questions regarding category name versus trademark names. For example, the following instructions was initially shown to respondents in Version 2:

This survey is about *category* names and *trademark* names.  In a few moments you will be asked about a number of terms that you may or may not have seen or heard before.  But first, please read the next two screens about what we mean by a *<u>category</u>* name and what we mean by a *<u>trademark</u>* name.

Respondents were next shown the concept of what a category name is, followed by the concept of a trademark name. In Version 1 of the survey these two concepts were presented in reverse order:

A <u>category name</u> is a name that identifies a category that can include various organizations that are not affiliated with each other.  A category name can be used by more than one organization to identify what type of organization they are.

> On the other hand, a <u>trademark name</u> is a name that identifies one specific organization.  A trademark name can only be used by one organization, or by branches of that organization, to identify itself.
>
> Please read the examples of category and trademark names on the next screens.

Respondents were also then shown the two examples of category names and trademark names with the category names shown first:

> <u>Please read this example of category and trademark names in the area of financial institutions.</u>
>
> SAVINGS BANK is a <u>category</u> name, because it identifies a category that includes various organizations.
>
> On the other hand, CHASE BANK is a <u>trademark</u> name, because it identifies one specific organization.

Followed by:

> <u>Please read this example of category and trademark names in the area of political institutions.</u>
>
> THE LIBERAL LEFT is a <u>category</u> name because it identifies a category that includes various organizations.
>
> On the other hand, THE DEMOCRATIC NATIONAL COMMITTEE is a <u>trademark</u> name, because it identifies one specific organization.

Second, any time respondents were given an option to answer either "category name" or "trademark name," the order of these two response options was

flipped. That is, response options to these types of questions were always presented as follows to respondents in Version 2:[3]

- Category name
- Trademark name
- Don't know

Third, the order in which the following two questions (which assess whether or not respondents do in fact understand the concept of category names and trademark names) were asked, was reversed.  Accordingly, respondents in Version 2 were first asked:

Which type of name would you say **THE MEDICAL PROFESSION** is?

- Category name
- Trademark name
- Don't know

Followed by:

Which type of name would you say **THE AMERICAN MEDICAL ASSOCIATION** is?

- Category name
- Trademark name
- Don't know

Aside from these changes to the order in which "category name" and "trademark name" were shown throughout the survey, all aspects of the survey between Version 1 and Version 2 were identical.

---

[3] In Version 1 "trademark name" was presented as the first option and "category name" was presented second.

This concluded the survey for all respondents.

Screenshots of the survey will be provided in Appendix C.

## SUMMARY OF KEY FINDINGS

This section details certain key survey findings.  Other survey results are discussed further in the Detailed Findings section below.

### THE EPISCOPAL CHURCH

- 43.7% of respondents (131 of 300) identified THE EPISCOPAL CHURCH to be a trademark name of one specific organization.
- 55.3% of respondents (166 of 300) identified THE EPISCOPAL CHURCH to be a category of various organizations.
- 1.0% of respondents (3 of 300) did not know or had no opinion.

### EPISCOPAL CHURCH Group

- 38.5% of respondents (77 of 200) identified EPISCOPAL CHURCH to be a trademark name of one specific organization.
- 61.0% of respondents (122 of 200) identified EPISCOPAL CHURCH to be a category of various organizations.
- 0.5% of respondents (1 of 200) did not know or had no opinion.

Accordingly, the survey shows that both terms are more frequently perceived to be generic terms than trademarks.  As discussed in the Detailed Findings section below, these conclusions apply both to the subgroup of Episcopalians and the subgroup from other denominations.

See Detailed Findings section below for additional information on results.  The full data will be provided in its original electronic form in Appendix D.

## *METHODOLOGY*

### THE RELEVANT UNIVERSE OF INTEREST

The appropriate sample universe for this survey consisted of U.S. consumers, age 18 and older, who are members of religious institutions or attend religious services, either at Episcopalian churches or other churches.

I adopted the same definition of the sample universe as The Episcopal Church's expert Robert Klein in the South Carolina State Court matter -- namely, individuals who are members of a religious institution or attend religious services, either at Episcopalian churches or other churches.[4]

The following screening questions were employed to ensure the final survey sample was comprised of respondents from the appropriate sample universe.

First, after initial demographic questions, all potential respondents were asked:

> Which of the following, if any, are you a member of?
> *(Select all that apply)*

The following table displays the randomized list of response options available from which respondent could select and the proportion of final respondents who selected each:

---

[4] The Klein Survey in the South Carolina State Court matter also included South Carolina residents who did not attend an Episcopal Church or religious services. I did not include such individuals here, as residency in South Carolina alone is not a basis for inclusion in a national survey assessing whether the terms at issue function more as generic terms or trademarks.

| Personal membership | Total (N=500) | |
|---|---|---|
| | N | % |
| A religious organization or institution | 362 | 72.4% |
| A museum or gallery | 65 | 13.0% |
| A sports league or association | 61 | 12.2% |
| A golf or country club | 33 | 6.6% |
| None of the above | 109 | 21.8% |

Respondents who selected "a religious organization or institution" were considered part of the relevant sample universe and qualified to participate in the main survey. The other options on the list were provided in order to mask the survey topic and to provide respondents with a list of options from which they could select.

Respondents were also asked:

> Which of the following, if any, do you personally do?
> *(Select all that apply)*

The following table displays the randomized list of response options available from which respondent could select and the proportion of final respondents who selected each:

| Personal participation... | Total (N=500) | |
|---|---|---|
| | N | % |
| Attend religious services | 480 | 96.0% |
| Visit museums or art galleries | 302 | 60.4% |
| Play golf | 98 | 19.6% |
| Play on a sports team | 59 | 11.8% |
| None of the above | 8 | 1.6% |

Respondents who selected "attend religious services" were also considered part of the relevant sample universe and qualified to participate in the main survey. The other options on the list were provided to mask the survey topic and to provide respondents with a list of options from which they could select.

Upon completion of the main survey, all respondents were asked the following final questions for classification purposes.

> Are you a member of or do you attend religious services at...?
> *(Select all that apply)*

The following table displays the randomized list of response options available to respondent and the proportion of final respondents who selected each:

| Religious Institution | Total (N=500) | |
|---|---|---|
| | N | % |
| A Catholic church | 13 | 2.6% |
| A Jewish temple or synagogue | 1 | 0.2% |
| A Buddhist temple | 0 | 0.0% |
| An Islamic mosque | 0 | 0.0% |
| A Baptist church | 86 | 17.2% |
| A Methodist church | 58 | 11.6% |
| A Lutheran church | 40 | 8.0% |
| A Hindu temple | 0 | 0.0% |
| A Mormon church or temple | 0 | 0.0% |
| A Presbyterian church | 12 | 2.4% |
| A Pentecostal church | 9 | 1.8% |
| An Episcopal church | 277 | 55.4% |
| A nondenominational or independent church | 49 | 9.8% |
| Somewhere else. Please specify | 20 | 4.0% |
| None of the above | 5 | 1.0% |

Respondents were also asked:

> In the past 3 months, have you taken any other survey that related to any Episcopal Church or Diocese?

The following table displays the randomized list of response options available to respondent and the proportion of final respondents who selected each:

| Recent Survey | Total (N=500) | |
|---|---|---|
| | N | % |
| Yes, I have | 5 | 1.0% |
| No, I have not | 492 | 98.4% |
| Don't recall | 3 | 0.6% |

This question allowed me to identify any respondents who might have recently participated in a related survey.

These questions were asked at the end of the survey as opposed to during the initial screening questions to avoid any potential bias to the key survey results due to the mention of these specific topics prior to respondents answering the main survey questions. Removal of the 5 respondents who answered affirmatively would not have any meaningful impact on the survey results or conclusions.

This concluded the screening and classification questions for all respondents.

The actual wording of the screening questions used is shown in Appendix B.

## SAMPLING PLAN

The sampling plan involved a random selection of consumers who are part of an online panel.

Online surveys are well-accepted in the field of survey research as a standard, reliable methodology. Indeed, online surveys are now the most common method of conducting market research among consumers. Businesses and other organizations routinely make decisions of importance based on the results of online survey research, and online surveys have been accepted in evidence in numerous U.S. District Court cases. I have personally designed and executed numerous internet surveys that have been accepted by courts.

The sample of panelists used in the survey was provided by Research Now, a leading supplier of online sample for surveys. I have worked with Research

Now on many surveys and have found its procedures and panels to be highly reliable. Research Now has a large and diverse panel consisting of millions of Americans and is highly regarded as a reputable source of respondents for online surveys within the field of market research. Research Now utilizes appropriate industry procedures for ensuring the integrity and quality of its panels. Research Now employs a "by-invitation-only" panel recruitment model to enroll pre-validated individuals and, therefore, maintains a panel comprised of the most credible survey takers who are less prone to self-selection bias. Quality and integrity of its research panel is also obtained and maintained in the following ways.

- It requires a double opt-in and agreement to provide truthful and well-considered answers to online market research surveys. First, potential panelists opt-in during the enrollment process, and then they are sent a follow-up email confirmation that requests the potential panelist to click a link to validate the opt-in. Then, he or she is sent a follow-up email providing access to their member account and they can begin receiving surveys.
- A unique email address is required to opt-in to the panel and physical addresses provided by panelists in the US are verified against government postal information.
- Research Now implements data quality measures by focusing on identifying and pursuing panelists who exhibit suspicious behaviors. This is done by identifying members through routine review of behaviors and sometimes with the help of its clients, and then evaluating a wider set of behaviors, particularly members profile information and survey performance.
- Research Now also employs a "Three Strikes Policy" in which panelists who commit survey offenses, such as speeding, inattentiveness, poor quality open ends, answering inconsistencies, and selecting dummy

answers, are flagged with an "offense" code. Panelists who are flagged three times for such offenses are disqualified from panel membership and future surveys.

Using data that had previously been collected (completely unrelated to this survey), Research Now was able to pre-identify members of its panel who had previously, in response to panel profiling questions, indicated that they identify as Anglican/Episcopalian or Protestant denominations.

Invitations were then sent targeting those pre-identified panelists, thus giving a high degree of reliability that respondents entering the survey were indeed people who are members of a religious organization or institution or who attend religious services. The purpose of the survey was withheld from respondents and nothing in the invitation to panelists indicated that they received the invitation because of a religious affiliation.

Without knowing the purpose of the survey, respondents needed to meet the screening criteria to qualify for the survey. In doing so, they confirmed that they indeed are part of the Relevant Sample Universe.

The following tables display the final proportion of sample achieved by age and gender in each Group:

| Age/gender | Total (N=500) | |
|---|---|---|
| | N | % |
| Male 18-34 | 76 | 15.2% |
| Male 35-49 | 68 | 13.6% |
| Male 50+ | 97 | 19.4% |
| Female 18-34 | 75 | 15.0% |
| Female 35-49 | 72 | 14.4% |
| Female 50-64 | 112 | 22.4% |

Invitations were also sent in proportion to U.S. Census data by region. The
following table displays the final proportion of sample achieved by region:

| Final Sample by Region | Total (N=500) | |
|---|---|---|
| | N | % |
| Midwest | 74 | 14.8% |
| Northeast | 69 | 13.8% |
| South | 155 | 31.0% |
| West | 81 | 16.2% |
| Southeast | 121 | 24.2% |

## DATA PROCESSING

Data was collected by Focus Vision, a company specializing in web survey
programming and data collection and processing, and made available to Hal
Poret, LLC through an electronic portal on an ongoing basis.  The data set
showing each respondent's answers to all questions will be provided in
electronic form.[5]

## INTERVIEWING PROCEDURES

The online survey was programmed and hosted by Focus Vision.  My staff and I
thoroughly tested the programmed survey prior to any potential respondents
receiving the invitation to participate in the survey.

## DOUBLE-BLIND INTERVIEWING

The study was administered under "double-blind" conditions.  That is, not only
were the respondents kept uninformed as to the purpose and sponsorship of the
study, but the services involved in providing the sample and administering the

---

[5] See Appendix D of this report.

online interviews (Focus Vision and Research Now) were similarly "blind" with respect to the study's purpose and sponsorship.

## INTERVIEWING PERIOD

Interviewing was conducted from April 2, 2018 through April 10, 2018.

## QUALITY CONTROL

Several measures were implemented to ensure a high level of quality control and validation with respect to respondents taking the survey.

Upon initially entering the survey, all respondents were required to pass a test to verify that each respondent is a live person. The test employed in this survey is a CAPTCHA[6] program that generates a task that humans can pass but current computer programs cannot. CAPTCHA is a well-known and widely-used tool in online survey research.

Upon successfully passing the CAPTCHA test, respondents were then asked to enter their year of birth and then their gender.  This information was checked against the sample provider's (Research Now's) demographics on record for each respondent and any respondent providing an incorrect or inconsistent birth year and/or gender was unable to continue to the main survey.

Additionally, respondents were then asked to select their age range. Respondents who selected an age range inconsistent with their year of birth were unable to continue with the survey.

---

[6] CAPTCHA is an acronym for "Completely Automated Public Turing test to tell computers and Humans Apart."

These combined steps ensured that the survey was being taken by an actual live person and that each person was paying a certain level of attention to the survey questions and taking a certain level of care in entering responses.

All respondents were also asked to select any web browsers or search engines they have used in the past three months. Respondents could select as many as applied to them from a list of ten options, including, "other," "not sure" and one fictitious name: Hagelin. Respondents who selected "Hagelin" were unable to continue.  Additionally, respondents who answered that they have used all seven of the actual web browsers and search engines included on the response list, were identified as "yea-sayers" and unable to continue with the survey.[7]

The following question was also asked and permitted additional screening out of respondents who were paying insufficient attention or clicking responses indiscriminately:

> For quality assurance, please type the word "west" in the blank next to the "Other" box below and then click to continue.
> - Strongly agree
> - Agree
> - Neutral
> - Disagree
> - Strongly disagree
> - Other _____

Respondents who selected "other" and typed a response in the blank continued with the survey. A review was conducted of all open-ended answers, including responses to this question and respondents who failed to follow instructions for

---

[7] "Yea-sayers" in surveys are typically defined as respondents who answer affirmatively to questions, regardless of their belief.

this question, or gave other non-responsive or nonsense answers to open-ended questions were removed from the final data.

Respondents were then also asked to carefully read these instructions:

*        Please take the survey in <u>one</u> session without interruption.

*        Please keep your browser maximized for the entire survey.

*        While taking the survey, please do not consult any other websites or other electronic or written materials.

*        Please answer all questions on your own without consulting any other person.

*        Please do not guess.  If you don't know for any question, please indicate so.

*        If you normally wear eye glasses or contact lenses when viewing a computer screen, please wear them for the survey.

Two options were provided in response to these instructions: 1) I understand and agree to the above instructions, and 2) I do not understand or do not agree to the above instructions.  Only respondents who understood and agreed to the instructions then continued to the main section of the survey.

## DETAILED FINDINGS

The following table shows the results among respondents who were asked to classify the term THE EPISCOPAL CHURCH:

| THE EPISCOPAL CHURCH | |
|---|---|
| N=300 | THE EPISCOPAL CHURCH |
| Category name | 55.3%<br>166 |
| Trademark name | 43.7%<br>131 |
| Don't know | 1.0%<br>3 |

The following tables show the results broken down among the sub-group of Episcopalians and other denominations:

| Results for "THE EPISCOPAL CHURCH" By Subgroup | | |
|---|---|---|
| | Episcopalians<br>N=166 | Other Denominations<br>N=134 |
| Category name | 53.6%<br>89 | 46.4%<br>77 |
| Trademark name | 45.8%<br>76 | 41.0%<br>55 |
| Don't know | 0.6%<br>1 | 1.2%<br>2 |

As these tables show, the term THE EPISCOPAL CHURCH was more frequently perceived as a category name than as a trademark name both among Episcopalians and other denominations.

The following table shows the results among respondents who were asked to classify the term EPISCOPAL CHURCH:

| EPISCOPAL CHURCH | |
| --- | --- |
| N=200 | EPISCOPAL CHURCH |
| Category name | 61.0%<br>122 |
| Trademark name | 38.5%<br>77 |
| Don't know | 0.5%<br>1 |

The following tables show the results broken down among the sub-group of Episcopalians and other denominations:

| Results for "EPISCOPAL CHURCH" By Subgroup | | |
| --- | --- | --- |
| | Episcopalians<br>N=111 | Other Denominations<br>N=89 |
| Category name | 59.5%<br>66 | 62.9%<br>56 |
| Trademark name | 40.5%<br>45 | 36.0%<br>32 |
| Don't know | 0.0%<br>0 | 1.1%<br>1 |

As these tables show, the term EPISCOPAL CHURCH was more frequently perceived as a category name than as a trademark name both among Episcopalians and other denominations.

classification of trademark names, further validating that respondents understood the concepts of trademark and category names and properly applied them to religious institution terms.  In particular, the 81.6% result for the term INDEPENDENT METHODIST EPISCOPAL CHURCH validates that the survey does accurately classify a trademark name containing "Episcopal" as a trademark.

## CONCLUSIONS

It is my opinion that the survey reliably establishes that the terms THE EPISCOPAL CHURCH and EPISCOPAL CHURCH are more frequently perceived to be generic terms than trademark terms among individuals who are members of or attend religious services at Episcopal churches or other churches.

THE FOLLOWING APPENDICES PROVIDED SEPARATELY:

**APPENDIX A – CURRICULUM VITAE OF STUDY'S AUTHOR**
**APPENDIX B – QUESTIONNAIRE**
**APPENDIX C – SCREENSHOTS OF PROGRAMMED SURVEY**
**APPENDIX D – DATA FILE**

*Category Benchmarks*

The following table displays the results for the other category names included in the survey:

| N=500 | Category Names | |
|---|---|---|
| | EVANGELICAL CHURCH | THE CHRISTIAN CHURCH |
| Category name | 88.8% | 92.4% |
| Trademark name | 9.4% | 6.0% |
| Don't know | 1.8% | 1.6% |

As these results indicate, respondents generally were accurate in their classification of category names, further validating that respondents understood the concepts of trademark and category names and properly applied them to religious institution terms.

*Trademark Benchmarks*

The following table displays the results for the other trademark names included in the survey:

| N=500 | Trademark Names | |
|---|---|---|
| | THE FIRST PRESBYTERIAN CHURCH OF BETHLEHEM | INDEPENDENT METHODIST EPISCOPAL CHURCH |
| Trademark name | 95.6% | 81.6% |
| Category name | 3.8% | 15.6% |
| Don't know | 0.6% | 2.8% |

As these results indicate, respondents generally were accurate in their

***Testimony at Trial or by Deposition Past 4 Years***

(Party who retained me shown in bold)

2018   Monster Energy Company v. **Integrated Supply Network**
       (Deposition)                    USDC Central District of CA

2018   Sandoz v. **GlaxoSmithkline**
       (Deposition)                    USPTO Opposition

2018   JB-Weld v. **Gorilla Glue Company**    USDC Northern District of GA
       (Deposition)

2018   Bratton v. **The Hershey Company**
       (Deposition)                    USDC Central District of MO

2018   Leadership Studies v. **Blanchard Training & Development**
       (Deposition)                    USDC Southern District of CA

2017   Superior Consulting v. **Shaklee**
       (Deposition)                    USDC Middle District of FL

2017   **Mercado Latino** v. Indio
       (Deposition)                    USDC Central District of CA

2017   Delalat v. **Nutiva**
       (Deposition)                    USDC Northern District of CA

2017   Dashaw v. **New Balance**
       (Deposition)                    USDC Southern District of CA

2017   **Bearing Tech** v. O'Reilly Automotive
       (Deposition)                    USDC Western District of MO

2017   Soundview v. **Facebook**
       (Deposition)                    USDC District of Delaware

2017   Rovi v. **Comcast**
       (Deposition)                    USDC Southern District of NY

2017   Puma v. **Black & Decker**
       (Trial)                         New Mexico Circuit Court

2017    **Select Comfort v.** Personal Comfort
(Trial and Deposition)      USDC District of Minn

2017    **Alzheimer's Foundation of America** v. Alzheimer's Association
(Deposition and trial)      USDC Southern District of NY

2017    **Banc of California** v. Farmers & Merchants Bank
(Deposition)      USDC Central District of CA

2017    PolyGroup v. **Willis Electric**
(Deposition)      Patent Trial and Appeal Board

2017    In re: NCAA Grant-in-Aid Cap Litigation
(Deposition)      USDC Northern District of CA

2017    Mullins v. **Premier Nutrition**      USDC Northern District of CA
(Depositions in Class Cert and Merits phases)

2017    Lion's Gate v. **TD Ameritrade**
(Deposition)      USDC Central District of CA

2017    **Deere & Company** v. Fimco dba Schaben
(Deposition and trial)      USDC Western District of KY

2017    **Adidas & Reebok** v. TRB
(Deposition)      USDC District of Oregon

2017    **Church & Dwight** v. SPD      USDC Southern District of NY
(Deposition/trial in liability phase; deposition/trial in damages phase)

2017    In re: **Coca Cola** Marketing and Sales Practices Litigation (No. II)
(Deposition)      USDC Northern District of CA

2017    **Ducks Unlimited** v. Boondux LLC and Caleb Sutton
(Deposition and Trial)      USDC Western District of TN

2017    Globefill v. **Element Spirits**
(Deposition and Trial)      USDC Central District of CA

2017    Brickman v. **Fitbit**
(Deposition)      USDC Northern District of CA

2017    Network-1 Technologies v. **Alcatel-Lucent et al.**

| | | |
|---|---|---|
| | (Deposition) | USDC Eastern District of TX |
| 2017 | Health Partner Plans v. **Reading Health Partners** (Deposition and Injunction hearing) | USDC Eastern District of PA |
| 2017 | In Re **Biogen** '755 Patent Litigation (Deposition) | USDC District of NJ |
| 2017 | **Cava Mezze** v. Mezze Mediterranean Grill (Trial) | USDC District of MD |
| 2017 | Mastrandrea v. **Vizio** (Deposition) | USDC Central District of CA |
| 2017 | **Adidas** v. Skechers (Deposition and Injunction hearing) | USDC District of OR |
| 2016 | **Triumph International, Inc.** v. Gourmetgiftbaskets.com, Inc. (Deposition) | USDC Central District of CA |
| 2016 | Phelan Holdings v. **Rare Hospitality Management** (Deposition) | USDC Middle District of FL |
| 2016 | **Intellectual Ventures II** v. AT&T Mobility (Deposition) | USDC District of DE |
| 2016 | **One World Foods** v. Stubbs Austin Restaurant Company (Deposition) | USDC Western District of TX |
| 2016 | **Booking.com B.V.** v. Michelle Lee (Deposition) | USDC Eastern District of VA |
| 2016 | Variety Stores v. **Walmart Stores, Inc.** (Trial) | USDC Eastern District of NC |
| 2016 | **American Cruise Lines** v. American Queen Steamboat Company (Deposition) | USDC District of DE |
| 2016 | Universal Church v. **Univ. Life Church** (Deposition) | USDC Southern District of NY |
| 2016 | **U. of Houston** v. Houston Col. of Law (Deposition) | USDC Southern District of TX |

| | | |
|---|---|---|
| 2016 | Navajo Nation v. **Urban Outfitters** (Daubert Hearing) | USDC District of NM |
| 2016 | Beaulieu v. **Mohawk Carpet Dist.** (Deposition) | USDC Northern District of GA |
| 2016 | Efficient Frontiers v. **Reserve Media** (Deposition) | USDC Central District of CA |
| 2016 | **McAirlaids** v. Medline Industries (Deposition) | USDC Eastern District of VA |
| 2016 | **Under Armour** v. Ass Armor (Deposition) | USDC Southern District of FL |
| 2016 | **C5 & CoorsTek** v. CeramTec (Deposition and trial) | USDC District of Colorado |
| 2016 | **BBC** v. Stander (Deposition) | USDC Central District of CA |
| 2016 | **Caterpillar** v. Tigercat (Deposition) | USPTO Opposition |
| 2016 | Premier v. **Dish Network** (Deposition) | USPTO Opposition |
| 2016 | **Omaha Steaks** v. Greater Omaha (Rebuttal Testimony) | USPTO Opposition |
| 2016 | **EMC** v. Pure Storage (Deposition) | USDC District of MA |
| 2016 | **Top Tobacco** v. North Atlantic (Deposition) | USPTO Opposition |
| 2016 | Ascension Health v. **Ascension Ins.** (Deposition) | USDC Eastern District of MO |
| 2016 | **Quoc Viet** v. VV Foods (Deposition and trial) | USDC Central District of CA |

| 2016 | Joules v. **Macy's Merchandising Group** (Deposition and trial) | USDC Southern District of NY |
|------|------|------|
| 2015 | MMG v. **Heimerl & Lammers** (Deposition and trial) | USDC District of MN |
| 2015 | **PRL USA** v. Rolex (Deposition) | USDC Southern District of NY |
| 2015 | Bison Designs v. **Lejon** (Deposition) | USDC District of CO |
| 2015 | Barrera v. **Pharmavite** (Deposition) | USDC Central District of CA |
| 2015 | **Flowers** v. Bimbo Bakeries (Deposition) | USDC Middle District of GA |
| 2015 | Razor USA v. **Vizio** (Deposition) | USDC Central District of CA |
| 2015 | Allen v. **Simalasan** (Deposition) | USDC Southern District of CA |
| 2015 | BMG Rights Mgmt. v. **Cox Enterprises** (Deposition and trial) | USDC Eastern District of VA |
| 2015 | Verisign v. **XYZ.COM LLC** (Deposition) | USDC Eastern District of VA |
| 2015 | Farmer Boys v. **Farm Burger** (Deposition) | USDC Central District of CA |
| 2015 | Ono v. **Head Racquet Sports** (Deposition) | USDC Central District of CA |
| 2015 | **Select Comfort v.** Tempur Sealy (Deposition) | USDC District of Minn |
| 2015 | ExxonMobil v. **FX Networks** (Deposition) | USDC Southern District of TX |
| 2015 | **Delta** v. Network Associates | |

|      | (Deposition)                                          | USDC Middle District of FL       |
|------|-------------------------------------------------------|----------------------------------|
| 2015 | Brady v. **Grendene**<br>(Deposition)                 | USDC Central District of CA      |
| 2015 | **Zippo** v. LOEC<br>(Deposition)                     | USDC Central District of CA      |
| 2015 | Maier v. **ASOS**<br>(Deposition)                     | USDC District of Maryland        |
| 2015 | **Converse** In re: Certain Footwear<br>(Deposition and trial) | International Trade Commission |
| 2014 | Scholz v. **Goudreau**<br>(Deposition)                | USDC District of Mass            |
| 2014 | **Economy Rent-A-Car** v. Economy Car Rentals<br>(TTAB Testimony) | USPTO             |
| 2014 | Weber v. **Sears**<br>(Deposition)                    | USDC Northern District of IL     |
| 2014 | Native American Arts v. **Stone**<br>(Deposition)     | USDC Northern District of IL     |
| 2014 | Gravity Defyer v. **Under Armour**<br>(Trial)         | USDC Central District of CA      |
| 2014 | **Adams** v. Target Corporation<br>(Deposition)       | USDC Central District of CA      |
| 2014 | PODS v. **UHAUL**<br>(Deposition and trial)           | USDC Middle District of FL       |
| 2014 | Flushing v. **Green Dot Bank**<br>(Deposition)        | USDC Southern District of NY     |
| 2014 | Amy's Ice Creams v. **Amy's Kitchen**<br>(Deposition) | USDC Western District of TX      |
| 2014 | **Unity Health** v. UnityPoint                        |                                  |

|      |                                                                     |                                   |
|------|---------------------------------------------------------------------|-----------------------------------|
|      | (Deposition)                                                        | USDC Western District of WI       |
| 2014 | In re: NCAA Student-athlete litigation (Deposition and Trial)       | USDC Northern District of CA      |
| 2014 | Spiraledge v. **SeaWorld** (Deposition)                             | USDC Southern District of CA      |
| 2014 | **Diageo N.A. v.** Mexcor (Deposition and trial)                    | USDC Southern District of TX      |
| 2014 | **Pam Lab** v. Virtus Pharmaceutical (Deposition and trial)         | USDC Southern District of FL      |
| 2014 | **US Soccer Federation** v. Players Ass'n (Arbitration Testimony)   | Arbitration                       |
| 2014 | **Estate of Marilyn Monroe** v. AVELA (Deposition)                  | USDC Southern District of NY      |
| 2014 | Kelly-Brown v. **Winfrey, et al.** (Deposition)                     | USDC Southern District of NY      |
| 2014 | Virco Mfg **v. Hertz & Academia** (Deposition)                      | USDC Central District of CA       |
| 2014 | In re: Hulu Privacy Litigation **(Deposition)**                     | USDC Northern District of CA      |
| 2013 | **Jackson Family Wines** v. Diageo (Deposition)                     | USDC Northern District of CA      |
| 2013 | Bubbles, Inc. v. **Sibu, LLC.** (Deposition)                        | USDC Eastern District of VA       |
| 2013 | Clorox v. **Industrias Dalen** (Deposition)                         | USDC Northern District of CA      |
| 2013 | Active Ride Shop v. **Old Navy** (Deposition and trial)             | USDC Central District of CA       |
| 2013 | **Macy's Inc**. v. Strategic Marks LLC. (Deposition)                | Northern District of CA           |

| 2013 | Karoun Dairies, Inc. v. **Karoun Dairies, Inc.** (Deposition) | Southern District of CA |
| 2013 | **Kraft Foods** v. Cracker Barrel Old Country (Deposition and Trial) | Northern District of IL |
| 2013 | **Bayer Healthcare** v. Sergeants Pet Care USDC (Deposition and Trial) | Southern District of NY |
| 2013 | JJI International v. **The Bazar Group, Inc.** (Deposition) | USDC District of RI |
| 2013 | **Fage Dairy USA** v. General Mills (Deposition) | Northern District of NY |
| 2013 | Gameshow Network v. **Cablevision** (Deposition and trial) | F.C.C. |
| 2013 | Telebrands v. **Meyer Marketing** (Deposition) | USDC Eastern District of CA |

*Presentations*

What's New in Advertising Law, Claim Support and Self-Regulation?
(ABA Seminar, November 17, 2015)

How Reliable is Your Online Survey
(2015 ASRC Annual Conference, September 29, 2015)

What Do Consumers Think?  Using Online Surveys to Demonstrate Implied Claims
(ANA Advertising Law and Public Policy Conference, April 1, 2015)

Cutting Edge Developments in Trademark Surveys (Rocky Mountain Intellectual Property & Technology Institute, May 30, 2013)

Using Survey Experts in Trademark Litigation (DRI Intellectual Property Seminar, May 9, 2013)

Surveys in Trademark and Advertising Litigation  (2013 National CLE Conference, Snowmass Colorado, January 2013)

Internet Survey Issues (PLI Hot Topics in Advertising Law Conference, March 2012)

Measuring Consumer Confusion Through Online Surveys (2011 Midwest IP Institute) (September, 2011)

Online Surveys as Evidence in Trademark Disputes (International Trademark Association Annual Conference, May 2011)

Managing Intellectual Property Trademark Roundtable (April 7, 2010)

Recent Trends in Trademark Surveys (Virginia State Bar Intellectual Property Conference, October 2009)

Trademark Surveys in US Litigation (presentation for International Trademark Association Annual Conference) (May 2009)

How to Conduct Surveys for use in Trademark Disputes (Practicing Law Institute Advanced Trademark Law Conference) (May 2009)

Trademark and Advertising Perception Studies for Legal Disputes (Opinion Research Corporation Seminar, June 2008)

Understanding Advertising Perception Surveys (Promotions Marketing Association Annual Law Conference) (November 2007)

Designing and Implementing Studies to Substantiate Advertising Claims (American Conference Institute Claims Substantiation Conference, October 2007)

Surveys in Trademark and False Advertising Disputes (InfoUSA Webinar, June 2007)

Measuring Consumer Perception in False Advertising and Trademark Cases, (multiple presentations) (2007)

Potential Errors to Avoid In Designing a Trademark Dilution Survey (American Intellectual Property Association paper, April 2007)

Consumer Surveys in Trademark and Advertising Cases (presentation at Promotions Marketing Association Annual Law Conference) (December 2006)

Use of Survey Research and Expert Testimony in Trademark Litigation, (International Trademark Association Annual Conference, May 2006)

Survey Research as Evidence in Trademark/Trade Dress Disputes (multiple presentations) (2006)

Using Surveys to Measure Secondary Meaning of Trade Dress, Legal Education Seminar, Boston, April 2006

*Publications/Papers*

Cutting Edge Developments in Trademark Surveys (Rocky Mountain Intellectual Property & Technology Institute, May 2013)

Hot Topics and Recent Developments in Trademark Surveys (paper for May 2013 DRI Intellectual Property Conference)

Surveys in Trademark and Advertising Litigation (2013 National CLE Conference, Snowmass Colorado, January 2013)

Trademark Litigation Online Consumer Surveys (Practical Law Company Intellectual Property and Technology, May 2012)

Hot Topics in Advertising Law 2012 (Contributor to Practising Law Institute publication)

A Comparative Empirical Analysis of Online Versus Mall and Phone Methodologies for Trademark Surveys, 100 TMR 756 (May-June 2010)

Recent Trends in Trademark Surveys (paper for Virginia State Bar Intellectual Property conference, October 2009)

Trademark Dilution Revision Act breathes new life into dilution surveys (In Brief PLI website, June 2009)

The Mark (Survey Newsletter; three editions 2009)

Hot Topics in Trademark Surveys (paper for Practicing Law Institute Advanced Trademark Law Conference) (May 2009)

The Mark (Survey Newsletter, 2008)

Trademark and Advertising Survey Report (Summer 2007)

Avoiding Pitfalls in Dilution Surveys under TDRA (AIPLA Spring Conference, Boston, May 2007)

*Commentary*

Comment on Hotels.com case (on TTABLOG.COM, July 24, 2009)

Comment on Nextel v. Motorola (on TTABLOG.COM, June 19, 2009)

PLI All-Star Briefing Newsletter, "What does the Trademark Dilution Revision Act mean for the future of Dilution Surveys?" (June 2009)

*Professional Memberships/Affiliations*

American Association of Public Opinion Research

International Trademark Association

National Advertising Division of Council of Better Business Bureaus

Appendix B: Questionnaire

| SCREENER |
|---|

**BASE: ALL RESPONDENTS**

Q99    Insert Captcha [HIDE "YOU ARE HUMAN" SCREEN]

**BASE: ALL RESPONDENTS**

Q100   Please select your year of birth. **[PROGRAMMER: DROP DOWN MENU. TERMINATE IF DOES NOT MATCH PANELIST'S PRELOAD.]**

**ASK IF: HAS NOT TERMINATED**

Q105   Are you… **[CHECK AGAINST PANEL VARIABLE AND TERMINATE IF IT DOES NOT MATCH]**

1. Male [PROGRAMMER: FOR PANEL VALIDATION]
2. Female [PROGRAMMER: FOR PANEL VALIDATION]

**ASK IF: HAS NOT TERMINATED**

Q107   Which of these age ranges includes your age?

**[TERMINATE IF UNDER 18 OR AGE RANGE NOT POSSIBLE BASED ON YEAR OF BIRTH ENTERED IN Q100. NOTE – Each respondent can have two possible ages depending on if respondent's birthday has passed.]**

1. Under 18 [TERMINATE]
2. 18-34
3. 35-49
4. 50-64
5. 65 or older

Appendix B: Questionnaire

**BASE: ANY NON-TERMINATES**

Q109   Which of the following web browsers or search engines, if any, have you used in the past 3 months?

*Please select all that apply.*

[RANDOMIZE]

1. Google Chrome
2. Internet Explorer
3. Microsoft Edge
4. Bing
5. Yahoo
6. Firefox
7. Opera
8. Hagelin
9. Other **[ANCHOR]**
10. Not sure **[ANCHOR; EXCLUSIVE]**

**[Terminate if selects 109/8 or all of 109/1-7]**

**ASK IF: HAS NOT TERMINATED**

Q110   In what state do you live?

**[PROGRAMMER: Drop down menu of states plus D.C. Include an option for "Other" and terminate if it is selected.]**

Appendix B: Questionnaire

**ASK IF: HAS NOT TERMINATED**

Q125    Which of the following, if any, are you a member of?

*(Select all that apply)*

**[RANDOMIZE]**

1.  A religious organization or institution
2.  A golf or country club
3.  A museum or gallery
4.  A sports league or association
5.  None of the above [ANCHOR; EXCLUSIVE]

**ASK IF: HAS NOT TERMINATED**

Q130    Which of the following, if any, do you personally do?

*(Select all that apply)*

**[SHOW IN SAME ORDER AS 125]**

1.  Attend religious services
2.  Play golf
3.  Visit museums or art galleries
4.  Play on a sports team
5.  None of the above [ANCHOR; EXCLUSIVE]

**[MUST SELECT 1 IN 125 AND/OR 130 TO CONTINUE; OTHERWISE, TERMINATE.]**

Appendix B: Questionnaire

**ASK IF: HAS NOT TERMINATED**

160.    For quality assurance, please type the word "west" in the blank next to the "Other" box below and then click to continue.

      1.  Strongly agree
      2.  Agree
      3.  Neutral
      4.  Disagree
      5.  Strongly disagree
      6.  Other _____ [DO NOT FORCE TEXT BOX]

[TERMINATE IF SELECTED 160/1-5 OR DOES NOT TYPE IN ANY ANSWER]

**ASK IF: HAS NOT TERMINATED**

170.    You have qualified to take this survey.  Before continuing, please carefully read these instructions:

\*        Please take the survey in <u>one</u> session without interruption.
\*        Please keep your browser maximized for the entire survey.
\*        While taking the survey, please do not consult any other websites or other electronic or written materials.
\*        Please answer all questions on your own without consulting any other person.
\*        Please do not guess.  If you don't know for any question, please indicate so.
\*        If you normally wear eye glasses or contact lenses when viewing a computer screen, please wear them for the survey.

      1.  I understand and agree to the above instructions
      2.  I do not understand or do not agree to the above instructions
         **[TERMINATE]**

**PRIVILEGED – CONFIDENTIAL**

Appendix B: Questionnaire

| MAIN SURVEY – ONLY QUALIFIED RESPONDENTS CONTINUE. |
| --- |

**[PROGRAMMER: Randomize whether respondent gets Version 1 or 2 in subsequent places where this is a variable.]**

410.
**[IF VERSION 1 INSERT, "*trademark*" FIRST & "*category*" SECOND IN THE FIRST & LAST SENTENCES.  IF VERSION 2 INSERT, "*category*" FIRST & "*trademark*" SECOND.]**

This survey is about *(insert "trademark" or "category")* names and *(insert "category" or "trademark")* names.  In a few moments you will be asked about a number of terms that you may or may not have seen or heard before.  But first, please read the next two screens about what we mean by a *(insert "trademark" or "category")* name and what we mean by a *(insert "category" or "trademark")* name.

420.    **[IF VERSION 1, SHOW Q420-1. IF VERSION 2, SHOW Q420-2.]**

420-1
A <u>trademark name</u> is a name that identifies one specific organization.  A trademark name can only be used by one organization, or by branches of that organization, to identify itself.

On the other hand, a <u>category name</u> is a name that identifies a category that can include various organizations that are not affiliated with each other.  A category name can be used by more than one organization to identify what type of organization they are.

Please read the examples of trademark and category names on the next screens.

**[PROGRAMMER: DO NOT ENABLE CONTINUE BUTTON FOR 15 SECONDS]**

420-2
A <u>category name</u> is a name that identifies a category that can include various organizations that are not affiliated with each other.  A category name can be used by more than one organization to identify what type of organization they are.

On the other hand, a <u>trademark name</u> is a name that identifies one specific organization.  A trademark name can only be used by one organization, or by branches of that organization, to identify itself.

Please read the examples of category and trademark names on the next screens.

**[PROGRAMMER: DO NOT ENABLE CONTINUE BUTTON FOR 15 SECONDS]**

**PRIVILEGED – CONFIDENTIAL**

Appendix B: Questionnaire

**[RANDOMIZE ORDER OF 423 AND 425]**

423.    **[IF VERSION 1, SHOW Q423-1. IF VERSION 2, SHOW Q423-2.]**

423-1
Please read this example of trademark and category names in the area of financial institutions.

CHASE BANK is a trademark name, because it identifies one specific organization.

On the other hand, SAVINGS BANK is a category name, because it identifies a category that includes various organizations.

**[PROGRAMMER: DO NOT ENABLE CONTINUE BUTTON FOR 15 SECONDS]**

423-2
Please read this example of category and trademark names in the area of financial institutions.

SAVINGS BANK is a category name, because it identifies a category that includes various organizations.

On the other hand, CHASE BANK is a trademark name, because it identifies one specific organization.

**[PROGRAMMER: DO NOT ENABLE CONTINUE BUTTON FOR 15 SECONDS]**

**425. IF VERSION 1, SHOW Q425-1. IF VERSION 2, SHOW Q425-2.]**

425-1
Please read this example of trademark and category names in the area of political institutions.

THE DEMOCRATIC NATIONAL COMMITTEE is a trademark name, because it identifies one specific organization.

On the other hand, THE LIBERAL LEFT is a category name because it identifies a category that includes various organizations.

**[PROGRAMMER: DO NOT ENABLE CONTINUE BUTTON FOR 15 SECONDS]**

425-2
Please read this example of category and trademark names in the area of political institutions.

THE LIBERAL LEFT is a category name because it identifies a category that includes various organizations.

On the other hand, THE DEMOCRATIC NATIONAL COMMITTEE is a trademark name, because it identifies one specific organization.

**[PROGRAMMER: DO NOT ENABLE CONTINUE BUTTON FOR 15 SECONDS]**

**430.    [IF VERSION 1 INSERT, "trademark" IN FIRST BLANK & "category" IN SECOND.  IF VERSION 2, VICE VERSA]**

`Do you understand the difference between a _____ name and a ____ name?
   1. Yes→ continue to 440
   2. No→ *terminate*
   3. Don't know → *terminate*


**440.    [IF VERSION 1, SHOW Q440-1 FIRST.  IF VERSION 2, SHOW Q440-2 FIRST]**

440-1  Which type of name would you say **THE AMERICAN MEDICAL ASSOCIATION** is?
       **[MAKE "trademark" TOP CHOICE IN VERSION 1 & SECOND CHOICE IN VERSION 2]**
       1. Trademark name → *continue*
       2. Category name→ *terminate*
       3. Don't know → *terminate*

440-2  Which type of name would you say **THE MEDICAL PROFESSION** is?
       **[MAKE "trademark" TOP CHOICE IN VERSION 1 & SECOND CHOICE IN VERSION 2]**
       1. Trademark name → *terminate*
       2. Category name→ *continue*
       3. Don't know → *terminate*

**PRIVILEGED – CONFIDENTIAL**

450.    [IF VERSION 1, "*trademark*" COMES FIRST & "*category*" SECOND IN SECOND SENTENCE.  IF VERSION 2, "*category*" COME FIRST & "*trademark*" SECOND]

We would now like to ask you about a series of terms that you may or may not have seen or heard before in the area of religious organizations or institutions.

For each term you are shown, please answer whether you think the term is a (*insert  with trademark underlined "trademark of one specific organization" or insert with category underlined "category of various organizations"*) or a (*insert "category of various organizations" or "trademark of one specific organization"*) in the area of religious organizations or institutions. Or if you don't know, you may select that option.

[FOR Q460 THERE ARE 2 ROTATIONS OF THE ORDER OF FIVE TERMS. RESPONDENTS WILL BE ASKED ABOUT EACH TERM ONE AT A TIME. ONE-HALF OF RESPONDENTS IN EACH VERSION SHOULD GET EACH OF THE 2 ROTATIONS.  FOR EACH ROTATION, ALWAYS SHOW FIRST AND LAST TERM IN THE POSITION SHOWN, BUT RANDOMIZE ORDER OF REMAINING TERMS]

| ROTATION 1 | ROTATION 2 |
| --- | --- |
| [IF CELL 1: THE EPISCOPAL CHURCH] [IF CELL 2: EPISCOPAL CHURCH] | THE CHRISTIAN CHURCH |
| THE FIRST PRESBYTERIAN CHURCH OF BETHLEHEM | THE FIRST PRESBYTERIAN CHURCH OF BETHLEHEM |
| EVANGELICAL CHURCH | EVANGELICAL CHURCH |
| INDEPENDENT METHODIST EPISCOPAL CHURCH | INDEPENDENT METHODIST EPISCOPAL CHURCH |
| THE CHRISTIAN CHURCH | [IF CELL 1: THE EPISCOPAL CHURCH] [IF CELL 2: EPISCOPAL CHURCH] |

PRIVILEGED – CONFIDENTIAL

Appendix B: Questionnaire

**[ASK Q460 5 TIMES FOR EACH RESPONDENT (ONE TIME FOR EACH TERM), FOR EACH OF THE FIVE TERMS, DISPLAY THE TERM IN UPPERCASE BOLD LETTERS, AND THEN THE QUESTION TEXT BENEATH THE TERM.]**

Q460. Do you think this is a ...
*[MAKE "trademark" TOP CHOICE IN VERSION 1 & SECOND CHOICE IN VERSION 2)*
1. Trademark of one specific organization
2. Category of various organizations
3. Don't know

**[PROGRAMMER: IN DATA SHOW RESULTS TO Q460 AS ONE TABLE/COLUMN FOR EACH TERM, REGARDLESS OF ROTATION/VERSION – e.g. SHOW ALL RESULTS FOR "THE EPISCOPAL CHURCH" TOGETHER IN ONE COLUMN/TABLE, ETC. CLEARLY IDENTIFY WHICH TERM EACH TABLE IS DISPLAYING THE RESULTS FOR.]**

<u>ASK: ALL QUALIFIED</u>
500    Thank you.  Just two more brief questions.

Are you a member of or do you attend religious services at…?
**[RANDOMIZE]**
*(Select all that apply)*
1. A Catholic church
2. A Jewish temple or synagogue
3. A Buddhist temple
4. An Islamic mosque
5. A Baptist church
6. A Methodist church
7. A Lutheran church
8. A Hindu temple
9. A Mormon church or temple
10. A Presbyterian church
11. A Pentecostal church
12. An Episcopal church
13. A nondenominational or independent church **[ANCHOR]**
14. Somewhere else. *Please specify* **[ANCHOR; TEXT BOX]**
15. None of the above **[ANCHOR; EXCLUSIVE]**

<u>ASK: ALL QUALIFIED</u>
510    In the past 3 months, have you taken any other survey that related to any Episcopal Church or Diocese?

Appendix B: Questionnaire

**[RANDOMIZE 1-2]**

1. Yes, I have
2. No, I have not
3. Don't recall

PRIVILEGED – CONFIDENTIAL

M101-0118: Religious Organization Questionnaire

| SCREENER |
| --- |

### Q99

I'm not a robot

reCAPTCHA

Continue »

Privacy Policy - Help

### Q100

Please select your year of birth.

Select one...

Continue »

### Q105

Are you...

Male

Female

Continue »

Privacy Policy - Help

M101-0118: Religious Organization Questionnaire

## Q107

Which of these age ranges includes your age?

Under 18

18-34

35-49

50-64

65 or older

Continue »

## Q109

Which of the following web browsers or search engines, if any, have you used in the past 3 months?
*Please select all that apply.*

Firefox

Yahoo

Opera

Internet Explorer

Hagelin

Bing

Microsoft Edge

Google Chrome

Other

Not sure

Continue »

## Q110

In what state do you live?

Select one...

Continue »

M101-0118: Religious Organization Questionnaire

## Q125



Which of the following, if any, are you a member of?
*(Select all that apply)*

A golf or country club

A religious organization or institution

A sports league or association

A museum or gallery

None of the above

Continue »

## Q130

Which of the following, if any, do you personally do?
*(Select all that apply)*

Play golf

Attend religious services

Play on a sports team

Visit museums or art galleries

None of the above

Continue »

M101-0118: Religious Organization Questionnaire

## Q160

For quality assurance, please type the word "West" in the blank next to the "Other" box below and then click to continue.

Strongly agree

Agree

Neutral

Disagree

Strongly disagree

Other

Continue »

Privacy Policy - Help

## Q170

You have qualified to take this survey. Before continuing, please carefully read these instructions:

* Please take the survey in <u>one</u> session without interruption.

* Please keep your browser maximized for the entire survey.

* While taking the survey, please do not consult any other websites or other electronic or written materials.

* Please answer all questions on your own without consulting any other person.

* Please do not guess. If you don't know for any question, please indicate so.

* If you normally wear eye glasses or contact lenses when viewing a computer screen, please wear them for the survey.

I understand and agree to the above instructions

I do not understand or do not agree to the above instructions

Continue »

Privacy Policy - Help

M101-0118: Religious Organization Questionnaire

| MAIN SURVEY |
| --- |

## Q410 Version 1

This survey is about **trademark** names and **category** names. In a few moments you will be asked about a number of terms that you may or may not have seen or heard before. But first, please read the next two screens about what we mean by a **trademark** name and what we mean by a **category** name.

Continue »

Privacy Policy - Help

## Q410 Version 2

This survey is about **category** names and **trademark** names. In a few moments you will be asked about a number of terms that you may or may not have seen or heard before. But first, please read the next two screens about what we mean by a **category** name and what we mean by a **trademark** name.

Continue »

## Q420 Version 1

A trademark name is a name that identifies one specific organization. A trademark name can only be used by one organization, or by branches of that organization, to identify itself.

On the other hand, a category name is a name that identifies a category that can include various organizations that are not affiliated with each other. A category name can be used by more than one organization to identify what type of organization they are.

Please read the examples of trademark and category names on the next screens.

Continue »

Privacy Policy - Help

M101-0118: Religious Organization Questionnaire

## Q420 Version 2

 47%

A category name is a name that identifies a category that can include various organizations that are not affiliated with each other. A category name can be used by more than one organization to identify what type of organization they are.

On the other hand, a trademark name is a name that identifies one specific organization. A trademark name can only be used by one organization, or by branches of that organization, to identify itself.

Please read the examples of category and trademark names on the next screens.

Continue »

## Q423 Version 1

 53%

Please read this example of trademark and category names in the area of financial institutions.

CHASE BANK is a trademark name, because it identifies one specific organization.

On the other hand, SAVINGS BANK is a category name, because it identifies a category that includes various organizations.

Continue »

Privacy Policy - Help

## Q423 Version 2

 54%

Please read this example of category and trademark names in the area of financial institutions.

SAVINGS BANK is a category name, because it identifies a category that includes various organizations.

On the other hand, CHASE BANK is a trademark name, because it identifies one specific organization.

Continue »

M101-0118: Religious Organization Questionnaire

## Q425 Version 1

49%

Please read this example of trademark and category names in the area of political institutions.

THE DEMOCRATIC NATIONAL COMMITTEE is a trademark name, because it identifies one specific organization.

On the other hand, THE LIBERAL LEFT is a category name because it identifies a category that includes various organizations.

Continue »

Privacy Policy - Help

## Q425 Version 2

49%

Please read this example of category and trademark names in the area of political institutions.

THE LIBERAL LEFT is a category name because it identifies a category that includes various organizations.

On the other hand, THE DEMOCRATIC NATIONAL COMMITTEE is a trademark name, because it identifies one specific organization.

Continue »

Privacy Policy - Help

## Q430 Version 1

57%

Do you understand the difference between a *trademark* name and a *category* name?

Yes

No

Don't know

Continue »

Privacy Policy - Help

M101-0118: Religious Organization Questionnaire

## Q430 Version 2

55%

Do you understand the difference between a *category* name and a *trademark* name?

Yes

No

Don't know

Continue »

Privacy Policy · Help

## Q440 Version 1

59%

Which type of name would you say **THE AMERICAN MEDICAL ASSOCIATION** is?

Trademark name

Category name

Don't know

Continue »

Privacy Policy · Help

63%

Which type of name would you say **THE MEDICAL PROFESSION** is?

Trademark name

Category name

Don't know

Continue »

Privacy Policy · Help

M101-0118: Religious Organization Questionnaire

## Q440 Version 2

| | 59% |
|---|---|

Which type of name would you say **THE MEDICAL PROFESSION** is?

Category name

Trademark name

Don't know

Continue »

Privacy Policy - Help

| | 63% |
|---|---|

Which type of name would you say **THE AMERICAN MEDICAL ASSOCIATION** is?

Category name

Trademark name

Don't know

Continue »

Privacy Policy - Help

## Q450 Version 1

| | 66% |
|---|---|

We would now like to ask you about a series of terms that you may or may not have seen or heard before in the area of religious organizations or institutions.

For each term you are shown, please answer whether you think the term is a **_trademark_ of one specific organization** or a **_category_ of various organizations** in the area of religious organizations or institutions. Or if you don't know, you may select that option.

Continue »

M101-0118: Religious Organization Questionnaire

## Q450 Version 2

We would now like to ask you about a series of terms that you may or may not have seen or heard before in the area of religious organizations or institutions.

For each term you are shown, please answer whether you think the term is a **_category_ of various organizations** or a **_trademark_ of one specific organization** in the area of religious organizations or institutions. Or if you don't know, you may select that option.

Continue »

Privacy Policy - Help

Q460 -- the follwoing screenshots were taken from Version 2:

## IF CELL 1



**THE EPISCOPAL CHURCH**

Do you think this is a ...

Category of various organizations

Trademark of one specific organization

Don't know

Continue »

Privacy Policy - Help

M101-0118: Religious Organization Questionnaire

## IF CELL 2

**EPISCOPAL CHURCH**

Do you think this is a ...

    Category of various organizations

    Trademark of one specific organization

    Don't know

73%

Continue »

Privacy Policy - Help

**THE CHRISTIAN CHURCH**

Do you think this is a ...

    Category of various organizations

    Trademark of one specific organization

    Don't know

72%

Continue »

Privacy Policy - Help

**THE FIRST PRESBYTERIAN CHURCH OF BETHLEHEM**

Do you think this is a ...

    Category of various organizations

    Trademark of one specific organization

    Don't know

76%

Continue »

Privacy Policy - Help

M101-0118: Religious Organization Questionnaire

90%

**INDEPENDENT METHODIST EPISCOPAL CHURCH**

Do you think this is a ...

Category of various organizations

Trademark of one specific organization

Don't know

Continue ➤

Privacy Policy - Help

84%

**EVANGELICAL CHURCH**

Do you think this is a ...

Category of various organizations

Trademark of one specific organization

Don't know

Continue ➤

Privacy Policy - Help

M101-0118: Religious Organization Questionnaire

## Q500

92%

Thank you. Just two more brief questions.

Are you a member of or do you attend religious services at…?
*(Select all that apply)*

A Baptist church

A Pentecostal church

An Islamic mosque

A Jewish temple or synagogue

A Lutheran church

A Catholic church

A Presbyterian church

An Episcopal church

A Hindu temple

A Mormon church or temple

A Buddhist temple

A Methodist church

A nondenominational or independent church

Somewhere else. *Please specify* _____

None of the above

Continue »

## Q510

96%

In the past 3 months, have you taken any other survey that related to any Episcopal Church or Diocese?

No. I have not

Yes, I have

Don't recall

Continue »

Privacy Policy - Help