## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| The Right Reverend Charles G. vonRosenberg, et al., | ) ) ) | Civil Action No. 2:13-587-RMG |
| Plaintiffs, | ) ) ) | **ORDER AND OPINION** |
| The Episcopal Church, | ) ) | |
| Plaintiff in Intervention v. | ) ) ) ) | |
| The Right Reverend Mark J. Lawrence, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on the Disassociated Parishes thirty-five motions for summary judgment on all claims. (Dkt. Nos. 556 – 70; 572 – 579; 581 – 583; 587 – 593; 599 – 600.)[1] The Motions are granted in part and denied in part.

**I.    Background**

This case arises out of a schism in 2012 in the Historic Diocese, originally known as the "Protestant Episcopal Church in the State of South Carolina," in which certain members and parishes sought to dissociate from The Episcopal Church, a nationwide hierarchical church. The parties have litigated property issues relating to the schism in the state courts of South Carolina, culminating in a 2017 decision in the South Carolina Supreme Court, and have raised in this action issues surrounding the use of certain federal and state law marks in contest between the national

---

[1] In addition to this Order, the Court has issued Orders on the Plaintiffs' and Disassociated Diocese's motions for summary judgment (Dkt. Nos. 584, 595, 603, 610) and on the Parties' *Daubert* motions (Dkt. Nos. 580, 585, 597, 598.) Additionally, the brief for the Motion for Summary Judgment by Church of the Holy Comforter, *et al.* (Dkt. No. 568) is contained at Docket Number 571.

church and its affiliates and the disassociating diocese and its affiliates. As in separate Orders, it is important to identify the major parties in this dispute. The parties are as follows:

1. Plaintiff The Episcopal Church of the United States (hereafter "TEC") is the national church and an Intervenor Plaintiff in this action;

2. The Protestant Episcopal Church in the State of South Carolina (hereafter the "Historic Diocese"), which was formed as early as 1785 and has long affiliated with TEC;

3. Plaintiff The Episcopal Church in South Carolina (hereafter "TECSC"), which was headed initially by Plaintiff Bishop Charles G. vonRosenberg and subsequently by Plaintiff Provisional Bishop Gladstone B. Adams, III and is affiliated with TEC;

4. Defendant The Diocese of South Carolina (hereafter "Disassociated Diocese"), headed by Defendant Right Reverend Mark Lawrence and was formed following the schism in 2012 to disassociate from TEC;

5. The Defendant parishes associated with the Disassociated Diocese (hereafter "Disassociated Parishes") are the movants on the motions here and are members of the Disassociated Diocese.

As held in a separate Order, Plaintiffs' own the following marks. TEC's marks are:

- "The Protestant Episcopal Church in the United States";
- "The Episcopal Church";
- "The Episcopal Church Welcomes You";
- "La Iglesia Episcopal", and;
- The Episcopal Shield.[2]

(Dkt. No. 595-5 – 595-12; 595-64 – 595-69.) TECSC's marks are:

- "Diocese of South Carolina";

---

2 

- "The Episcopal Diocese of South Carolina";
- "The Protestant Episcopal Church in the Diocese of South Carolina";
- The Diocesan Seal.[3]

(Dkt. No. 584-3.)

In conjunction with the summary judgment briefing, the Disassociated Parishes filed thirty-five motions for summary judgment as to all of Plaintiffs' claims. Each motion has been fully briefed, with the Plaintiffs responding to the motion and the moving Party filing a reply.

## II.    Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

---

 

3

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III.  Discussion

The Plaintiffs TEC and TECSC collectively bring five causes of action against all Defendants, including the Disassociated Parishes: trademark infringement under the Lanham Act, trademark dilution under the Lanham Act, false advertising under the Lanham Act, trademark infringement under state law, and cancellation of trademarks under state law. The Disassociated Parishes move for summary judgment on each of these claims. The Court, in a separate Order, granted Plaintiffs summary judgment on each of these claims. The Court therefore first addresses the effect of the contemporaneous Order on the Disassociated Parishes, and next addresses outstanding issues.

#### A.  Effect of Summary Judgment Order on Disassociated Parishes

Each of the Disassociated Parishes argue, erroneously, that the Plaintiffs have failed to present evidence of likelihood of confusion regarding the Parishes use of Plaintiffs' marks. As to the marks owned by the Plaintiffs, this is incorrect. Plaintiffs submitted extensive evidence that each Disassociated Parish refers to themselves, as shown by references on parish websites, bulletins, newsletters, and responses to discovery requests, as members of "The Protestant Episcopal Church in the Diocese of South Carolina" or the "Diocese of South Carolina" (Dkt. No. 595-75; 595-79), that many of the Disassociated Parishes use the same exact buildings that they

used prior to the dissociation in 2012 (Dkt. No. 595-76), that the Parishes use the Book of Common Prayer and/or TEC's hymnals (Dkt. No. 595-77), and that the Disassociated Parishes use the Diocesan Seal owned by TECSC (Dkt. No. 595-78). Additionally, much of the analysis is identical for the Disassociated Parishes as the Disassociated Diocese: the Court already found TEC's marks to be strong and TECSC's marks to have some strength, particularly regarding identical use in the same market; that the marks that Plaintiffs demonstrated the Disassociated Parishes use, "The Episcopal Diocese of South Carolina," "The Protestant Episcopal Church in the Diocese of South Carolina," the "Diocese of South Carolina" and the Diocesan Seal, are substantially similar, or identical, to Plaintiffs' marks; there is no dispute the Disassociated Parishes also offer religious services, there is no dispute that many of the Disassociated Parishes use the same exact buildings as prior to the schism, and; there is no dispute that the quality of the Parties' products are similar. Furthermore, the analysis for similar advertising and sophistication of the consuming public is generally applicable and therefore identical for the Disassociated Diocese and Disassociated Parishes. Most importantly, the survey regarding actual confusion is specific to the terms, not the individual Defendants, and therefore similarly applies equally to the Disassociated Parishes' use of Plaintiffs' marks, such as the "The Protestant Episcopal Church in the Diocese of South Carolina" and "The Episcopal Diocese of South Carolina." Finally, and most importantly, there is no dispute that each of the Disassociated Parishes have used the term "The Episcopal Diocese of South Carolina," "The Protestant Episcopal Church in the Diocese of South Carolina," "Diocese of South Carolina" or the "Diocesan Seal" since the 2012 schism, each constituting trademark infringement. (Dkt. Nos. 595-75; 595-78; 595-79)

Further, for the same reasons discussed in a separate Order on the Plaintiffs' and Disassociated Diocese's motions for summary judgment, Plaintiffs are entitled to summary

judgment on their trademark dilution claims against the Disassociated Parishes, as TEC owns famous marks, the Disassociated Parishes has used similar marks in commerce, and the association between the marks, most notably "The Protestant Episcopal Church in the Diocese of South Carolina" or the "The Episcopal Diocese of South Carolina," is likely to impair the distinctiveness of TEC's marks.

Finally, as the Disassociated Diocese is not the continuation of the Historic Diocese, the Disassociated Parishes statement that they are affiliated with "The Protestant Episcopal Church in the Diocese of South Carolina" or the "Diocese of South Carolina" and use of the Diocesan seal also constitutes false advertising for the reasons stated in the separate Order.

However, while each of the Disassociated Parishes is therefore also liable for trademark infringement, trademark dilution and false advertising, the analysis is unnecessary as the injunction issued against the Disassociated Diocese and Defendant Lawrence is also binding on each of the Disassociated Parishes. As is well-settled, any injunction binds:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with [the individuals described in sub-sections (A) or (B)]

Fed. R. Civ. P. 65(d)(2). As the Seventh Circuit explained, Rule 65 covers the following individuals as well:

> nonparties with notice who are either "legally identified" with a party or who aid and abet a party's violation of the injunction. The "legal identity" component of this rule often operates to bind a party's successors and assigns, and sometimes other nonparties as well, but only when doing so is consistent with due process. As such, the "legal identity" justification for binding nonparties is limited to those who have notice of the injunction and are so closely identified in interest with the enjoined party that it is reasonable to conclude that their rights and interests were adjudicated in the original proceeding.

*Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 840–41 (7th Cir. 2010). In addition to being Parties in this case and directly affiliated members of the Disassociated Diocese, they further have clear notice of the injunction and are legally identified with the Disassociated Diocese: namely, they are the organizations that, throughout South Carolina, are the direct connection to the Disassociated Diocese for any parishioner. Therefore, regardless of their individual liability, which is also clear, the Disassociated Parishes are also subject to the injunction issued against all other Defendants.

### B.    Parish Names

However, as demonstrated by the Plaintiffs, many of the Disassociated Parishes still use the term "Episcopal" in their Parish name, either in their official corporate documents or, to a lesser extent, in the names the Parishes continue to use in public. Most notable are parishes such as Defendant All Saints Protestant Episcopal Church (Dkt. No. 558), Defendant The Vestry and Church Wardens of the Episcopal Church of the Parish of St. Matthew's (Dkt. No. 559), Defendant Holy Trinity Episcopal Church (Dkt. No. 560), Defendant Vestry and Church Wardens of the Episcopal church of the Parish of Christ Church (Dkt. No. 563), Defendant St. John's Episcopal, Charleston (Dkt. No. 566), Defendant The Vestry and Church Wardens of the Episcopal Church of the Parish of Prince George Winyah (Dkt. No. 569), and Defendant Christ St. Paul's Episcopal Church Dkt. No. 588). Other parishes have since removed the term "episcopal" from their names, however, "it is well established that the voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001).

However, while the Court has the legal authority and the record before it to enjoin the Disassociated Parishes from directly using the same or substantially similar marks to those owned by TEC and the TECSC, Plaintiffs have failed to demonstrate that the Disassociated Parishes' names that contain the word "Episcopal" or "Episcopal Church" constitute trademark infringement, trademark dilution or false advertising.

To begin with, many of the Disassociated Parishes use of the term "episcopal" in their names pre-date the creation of TEC or the Historic Diocese. Plaintiffs argue that this is irrelevant, as those Parishes later joined TEC and therefore their right to use those marks were "merged" with TEC, divesting them of any right to use their names. (Dkt. No. 620 at 6.) However, the merger doctrine is inapplicable to the Disassociated Parishes' names. As the Fourth Circuit recognized, "[w]here a name, not merely generic or descriptive is adopted by an order [the Elks], there is no reason why seceding members should be allowed to use it. Such use by seceding members, over whom the order has no further control, has obviously every element of unfairness that would arise from use by strangers." *Grand Lodge Improved, B.P.O.E. of the World, v. Eureka Lodge No. 5, Indep. Elks*, 114 F.2d 46, 48 (4th Cir. 1940). *See also Nat'l Bd. of Young Women's Christian Ass'n of U.S. A. v. Young Women's Christian Ass'n of Charleston, S. C.*, 335 F. Supp. 615, 621 (D.S.C. 1971) ("In this connection, a religious, benevolent or fraternal organization is entitled to protect the use of *its* name against those who secede.") (emphasis added). However, the merger doctrine is focused on preventing a seceding organization from using the name of the organization it was previously affiliated with. *See Nat'l Council of Young Men's Christian Associations of U.S. v. Columbia Young Men's Christian Ass'n of Columbia, SC*, No. CIV.A. 3:86-3304-16, 1988 WL 144985, at *4 (D.S.C. Aug. 2, 1988) ("the Court agrees that the defendant should not be permitted to assert a defense of prior use based on its use *of the plaintiff's name or marks* before it ratified

the plaintiff's constitution and became a charter member of the national organization.") (emphasis added). Here, the Disassociated Parishes who used "episcopal" in their names prior to 1785 are not continuing to use the Plaintiffs' names or marks. Therefore, this is not analogous to *Grand Lodge Improved,* where the schismatic group used the mark "Elks" after leaving the Elks Order, or *Nat'l Council of Young Men's Christian Associations of U.S.* where defendants continued to use the name "YMCA," the plaintiff's name. Instead, the Disassociated Parishes who existed prior to 1785 are using marks distinct from Plaintiffs' marks that Plaintiffs never used to identify themselves, namely, the Parishes own names which include various modifiers and dominant phrases to distinguish themselves from Plaintiffs' marks. Therefore, Plaintiffs' cannot demonstrate "prior use" regarding the Disassociated Parishes who had "episcopal" or "episcopal church" in their names prior to 1785.[4]

However, more fundamentally, Plaintiffs have not made out a claim that the use of the word "Episcopal" or "Episcopal Church" in the Disassociated Parishes' names creates a likelihood of confusion with Plaintiffs' marks. It is axiomatic that to make out a claim for trademark infringement, a plaintiff must demonstrate a likelihood of confusion. *See* 15 U.S.C. § 1114(1)(a); *Rosetta Stone, Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (test for Lanham Act claims). However, here, Plaintiffs have presented neither evidence nor argument that the inclusion of these words in the parish names, on their own, constitute trademark infringement. Plaintiff has presented no evidence that the marks at issue, names such as All Saints Protestant Episcopal Church, The Vestry and Church Wardens of the Episcopal Church of the Parish of St. Matthew's, and Holy Trinity Episcopal Church, among many others, are similar to Plaintiffs' marks. Indeed, given the

---

[4] The Lanham Act provides a limited prior use defense even as to incontestable marks. *See* 15 U.S.C.A. § 1115 (5).

addition of distinct and dominant words, it is unclear how the Court could determine these names to be similar without a sufficient record.

More importantly, Plaintiffs have presented no evidence of actual confusion as to these names. They have presented no survey regarding actual confusion between the Disassociated Parishes' names and Plaintiffs' marks, instead focusing solely on showing confusion by the Defendants' use of the marks "The Episcopal Diocese in South Carolina" and the "The Protestant Episcopal Church in South Carolina." While the Disassociated Diocese and Parishes are enjoined from using those marks, the Klein survey does not address confusion regarding individual Parish names. Further, while there is some anecdotal evidence of actual confusion related to parishes generally, none of the anecdotes identified by Plaintiffs target any specific parish name. Further, here, Plaintiffs have not presented any evidence regarding the Disassociated Parishes' intent, and instead the Court cannot find intent to infringe where sine of the parish names pre-dated TEC and TECSC and, further, that most parishes actually removed Episcopal from the name actually used on their signs and in public. (Dkt. No. 595-80.) Indeed, as opposed to the Disassociated Diocese which continues, until today, to use TECSC's exact marks, most of the Disassociated Parishes have ceased using the word "Episcopal" in their name in commerce.

As the Fourth Circuit held:

> [W]e are aware of no case where a court has allowed a trademark infringement action to proceed beyond summary judgment where two weak marks were dissimilar, there was no showing of a predatory intent, and the evidence of actual confusion was de minimis.

*George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 400 (4th Cir. 2009). Here, TEC's marks are strong, but the holding remains applicable: Plaintiffs have failed to demonstrate that there is a likelihood of confusion as they have presented no evidence that the Disassociated Parishes' names are similar to Plaintiffs' marks, that the Disassociated Parishes intended to

infringe, or that there was any actual confusion, based on a survey or anecdotal evidence, as to the Parish names. Without demonstrable evidence of a likelihood of confusion, the Court refuses, and cannot, order the Disassociated Parishes, some of whom have used their names for centuries, to fundamentally change the way they identify themselves.[5]

For substantially the same reasons as above, Plaintiffs also cannot make out a claim for trademark dilution or false advertising regarding the Parish names. As to trademark dilution, as above, Plaintiffs have failed to present evidence that any similarity of the Parishes' names and Plaintiffs' marks "gives rise to an association between the marks" or "that the association," if demonstrated, "is likely to impair the distinctiveness of the [Plaintiff's] famous mark." *Rosetta Stone Ltd.*, 676 F.3d at 168. Instead, as above, Plaintiffs have not presented evidence as to the Disassociated Parishes' names. Similarly, Plaintiffs presented no evidence of false advertising as to the Disassociated Parishes' names. The Disassociated Parishes, by using their own names, have not made an actually false statement, and the Plaintiffs have presented no evidence that the use of the names are misleading, that the misrepresentation is material, or that the misrepresentation actually deceives or has a tendency to deceive. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002).

Therefore, the Disassociated Parishes are entitled to summary judgment as to all claims regarding their use of their own parish names.

### C. Laches

The Disassociated Parishes each make a nearly identical argument that Plaintiffs' claims

---

[5] However, this ruling should not be construed as leeway to Disassociated Parishes who have chosen to distance themselves from TEC and TECSC by changing their consumer-facing names to reintegrate marks similar to Plaintiffs' into their names. Future uses that do cause a likelihood of confusion may always be addressed by further legal action.

are barred by laches. The Court has concurrently ruled that laches is inapplicable to the claims against Defendant Lawrence or the Disassociated Diocese, but for the sake of completeness and as the facts differ slightly, the Court addresses the argument here as well. The Disassociated Parishes correctly note that the Lanham Act borrows "analogous state limitations period," which here is three years. *Secret of the Islands, Inc v. Hymans Seafood Co. Inc.*, No. 2-17-CV-00342, 2018 WL 1566706, at *3 (D.S.C. Mar. 30, 2018) (citations omitted). Therefore, the Disassociated Parishes argue that Plaintiffs did not bring their claims in a timely manner and are barred by laches from asserting their trademark claims. The Disassociated Parishes focus on the fact that they were not added to this action until 2018, while Plaintiffs knew of the Disassociated Parishes use of "episcopal" in names and use of other marks since, at the latest, 2013. (*See, e.g.* 556 at 35.)

Though addressed in the context of a statute of limitations defense, the Court has already addressed and denied a similar argument. (Dkt. No. 411 at 5.) As explained previously, Plaintiffs solely seek prospective remedies, namely injunctive and declaratory relief, and do not seek any damages. The claims therefore do not relate to an injury that occurred only in 2012 or 2013, and instead the allegations assert ongoing violations. This includes the Disassociated Parishes' acknowledgment, through deposition answers and responses to requests for admission, and by listings of affiliated churches on the Disassociated Diocese's website, that the Disassociated Parishes continue using the term "Protestant Episcopal Church in the Diocese of South Carolina," the Diocesan shield and, most notably, all claim an affiliation with the "Diocese of South Carolina. (Dkt. No. 595-75; 595-78; 595-79; 621-2; 621-3)

As the Fourth Circuit held, "even in equity under the Lanham Act, laches does not bar a claim for prospective injunctive relief." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001) ("A prospective injunction is entered only on the basis of current, ongoing

conduct that threatens future harm. Inherently, such conduct cannot be so remote in time as to justify the application of the doctrine of laches"). Therefore, since Plaintiffs do not seek damages and seek equitable relief for ongoing violations, their claims are not barred by laches.

Further, the Court finds that equitable relief remains necessary and TEC did not "unreasonably delay" in seeking redress. The Fourth Circuit, in *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455 (4th Cir. 1996), held that, "[i]n a trademark case, courts may apply the doctrine of estoppel by laches to deny relief to a plaintiff who, though having knowledge of an infringement, has, to the detriment of the defendant, unreasonably delayed in seeking redress." The court further held that "the doctrine is sparingly applied where, as here, a plaintiff seeks only equitable relief" and that "in consideration of the public interest, estoppel by laches may not be invoked to deny injunctive relief if it is apparent that the infringing use is likely to cause confusion." Equitable relief is clearly necessary here for the public interest. As demonstrated by uncontroverted evidence discussed in this Order and a separate Order issued contemporaneously, there is widespread actual confusion and a likelihood of confusion caused by Defendants' infringement affecting a matter of public interest, namely, the identity of a major denominational religious organizations in the United States. Additionally, Plaintiffs did not "unreasonably" delay. Instead, in the wake of South Carolina Supreme Court's decision the related real property case on August 2, 2017, *Protestant Episcopal Church in the Diocese of S.C. v. Episcopal Church*, 421 S.C. 211, 806 S.E.2d 82 (2017), when it became clear that trademark matters would be decided before this Court, the Court issued an amended scheduling order setting a deadline for motions to amend pleadings. The Parties then jointly requested a stay of those deadlines pending mediation, which the Court granted. (Dkt. No. 112, 113.) After the stay was lifted, the Court issued an amended scheduling order setting a deadline for motions to amend pleadings for March 15, 2018. (Dkt. No. 119.) The

-13-

Plaintiffs met that deadline and moved to amend their complaints and add the Disassociated Parishes on March 1, 2018, which the Court subsequently granted in relevant part. (Dkt. Nos. 124, 125, 126, 140.) There is therefore no argument that the Plaintiffs delayed in asserting their claims, instead moving in a timely fashion once it became clear that this Court would have jurisdiction over the trademark claims and specifically following this Court's schedule for adding Parties, including an extension necessitated by the Parties *joint* motion for a stay.

Therefore, as Plaintiffs seek prospective relief, equitable relief is necessary in consideration of the public interest, and Plaintiffs did not unreasonably delay, laches does not bar the claims here.

### D.     The Well Ministries Motion for Summary Judgment (Dkt. No. 600)

Finally, Defendant The Well Ministries ("The Well") made an individual argument that Plaintiffs named the incorrect defendant, naming "The Well by the Sea, Myrtle Beach," rather than their name, "The Well Ministries." (Dkt. No. 600 at 6.) This issue was raised in The Well's Answers and Rule 26.01 disclosures. (Dkt. Nos. 391, 409, 410.) Therefore, because the incorrect name has not been corrected, The Well argues it must be dismissed as a defendant.

To begin with, as a close affiliate to the Disassociated Diocese and their notice of the Court's injunction who would, by continuing to use Plaintiffs' marks, abet the Disassociated Diocese in circumventing the Court's Order, regardless of whether The Well is dismissed from the case, it would be subject to the Court's injunction. Nonetheless, as the party named as a defendant has been clear for the duration of the case, with The Well receiving notice of the complaints and actively involved in litigation, the proper remedy is not dismissal at this stage but rather permitting Plaintiffs to amend their complaints. *See United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947) ("If it names them in such terms that every intelligent person understands who

is meant, as is the case here, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else."); *Hampton v. Wal-Mart Stores E., L.P.*, No. CIV. 1:09CV327, 2010 WL 99081, at *1 (W.D.N.C. Jan. 6, 2010)(granting leave to amend instead of dismissal based on incorrect name); *Dietz v. McAdams-Norman Prop., II, LLC*, No. 7:12-CV-00509-JCT, 2013 WL 247651, at *4 (W.D. Va. Jan. 23, 2013) ("Instead, the general rule in both the Fourth Circuit and Virginia is that where a party misnames a defendant, amendments to correct the name should be allowed...."). The Court therefore finds that, under Rule 15(a)(2), justice requires granting Plaintiffs leave to amend their Complaints to include the proper name of The Well, The Well Ministries, d/b/a The Well by the Sea. (Dkt. No. 391.)[6]

### E.    Permanent Injunctive Relief

The Lanham Act, 15 U.S.C. § 1116, gives the Court the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office...." 15 U.S.C. § 1116(a). To be granted a permanent injunction, a plaintiff must satisfy the traditional permanent-injunction analysis. *Mary Kay Inc. v. Ayres*, 827 F. Supp. 2d 584, 595 (D.S.C. 2011). Namely, a plaintiff must demonstrate irreparable harm, inadequacy of purely legal remedies, hardships balancing in its favor, and that the public interest would not be disserved by the injunction. *See PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011). The Fourth Circuit has noted that "an injunction is the preferred remedy to insure that

---

[6] The Well also requests that the Court, under Federal Rule of Civil Procedure 56(g), state material facts that are not in dispute. The Court has, through three contemporaneous Orders, ruled on all claims and all motions, the Court therefore declines to enter an order laying out material facts regarding The Well.

future violations will not occur...." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995).

An injunction is necessary here. As has been cited throughout this Order, the Fourth Circuit has made clear the necessity of enjoining a breakaway organization from continuing to use the name of its prior affiliate:

> Upon these facts, we do not think that there can be any doubt as to the right of plaintiffs to the injunction prayed. The use by one organization of the name of another for the purpose of appropriating the standing and good will which the other has built up is a well recognized form of the wrong known to the law as unfair competition, against which courts of equity have not hesitated, in any jurisdiction, to use the full power of the injunctive process.

*Purcell v. Summers*, 145 F.2d 979, 984 (4th Cir. 1944). The obvious and ongoing infringement and dilution of Plaintiffs' marks will continue to cause irreparable harm to Plaintiffs, and the ongoing false advertising co-opting the Historic Diocese's name will also continue to cause irreparable harm to its successor, TECSC. Further, purely legal remedies are inadequate: this is not a matter of monetary damages, instead it is the issue of an adoption of the Plaintiffs' history, goodwill, and name. Further, legal remedies would not sufficiently protect against future violations. The hardships weigh strongly in Plaintiffs' favor as they are subject to trademark infringement, trademark dilution and false advertising by the Disassociated Parishes and the Parishes have no right to infringe on, dilute or otherwise falsely advertise with Plaintiffs' marks. Finally, the public interest would be served by preventing future consumers from being misled.

This injunction shall be co-extensive with the injunction issued against all other Defendants in this case, but it does not extend to the use of the words "episcopal" or "episcopal church" in the Disassociated Parishes' names.[7]

---

[7] Although the Parties has not raised the issue, the Court is aware that some Disassociated Parishes have preexisting and inconspicuous historic artifacts or architecture that contain the Episcopal

-16-

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Disassociated Parishes thirty-five motions for summary judgment on all claims. (Dkt. Nos. 556 – 70; 572 – 579; 581 – 583; 587 – 593; 599 – 600.) The Motions are **GRANTED** as to Plaintiffs' claims regarding the Disassociated Parishes parish names. The Motions are otherwise **DENIED**. Further, the Court **GRANTS** Plaintiffs Motions for Summary Judgment (Dkt. Nos. 584, 595) against the Disassociated Parishes.

The Court also **GRANTS** Plaintiffs **LEAVE TO AMEND** the Complaints to substitute The Well Ministries d/b/a The Well by the Sea for The Well by the Sea, Myrtle Beach and **AMENDS** the caption of this case to substitute The Well Ministries d/b/a The Well by the Sea for The Well by the Sea, Myrtle Beach.

Finally, the Court hereby issues the following **PERMANENT INJUNCTION** and **ENJOINS** the Disassociated Parishes, their officers, agents, servants, employees, associates, subsidiaries and affiliates from using the following marks or any mark confusingly similar:[8]

- The Protestant Episcopal Church in the United States;
- The Episcopal Church;
- The Episcopal Church Welcomes You;
- La Iglesia Episcopal, and;

---

Shield or the Diocesan Shield. Plaintiffs have not sought removal of these artifacts or architecture and have offered no evidence of confusion from their presence and this Order therefore does not reach the issue.

[8] The Court holds that "The Episcopal Diocese of South Carolina" and "The Protestant Episcopal Church in the Diocese of South Carolina" are likely to cause confusion and Defendants are enjoined from using those marks.

- The Episcopal Shield.[9]

The Court further enjoins the Disassociated Parishes their officers, agents, servants, employees, associates, subsidiaries and affiliates from using any of the following marks or any mark confusingly similar:

- Diocese of South Carolina;

- The Episcopal Diocese of South Carolina;

- The Protestant Episcopal Church in the Diocese of South Carolina;

- The Diocesan Seal.[10]

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

September 19, 2019
Charleston, South Carolina

---



[9]

[10]